OPINION
{¶ 1} Defendants-appellants, Apollo Manufacturing, Inc. ("Apollo"), John Marusic, Draga Marusic, and Terry Hynds, appeal the December 4, 2001 judgment entry of the Lake County Court of Common Pleas granting, in part, and denying, in part, their motion for a protective order. For the reasons that follow, we affirm that decision with modifications.
 {¶ 2} Apollo is a manufacturer of machine parts in Willoughby, Ohio. John and Draga Marusic are shareholders/officers of Apollo and Terry Hynds is an employee of Apollo. Plaintiff-appellee, William Armstrong ("Armstrong"), worked for Apollo as a sales representative from February 1999 until January 2001, when Apollo terminated his employment. As a condition of employment, Armstrong was made to sign a customer protection agreement. This document stated that "the names of those companies [to which Apollo provides goods and services] and the contacts at those companies constitute trade secrets as defined by the Ohio Revised Code." On April 26, 2001, Armstrong filed suit against the defendants alleging breach of contract, tortious interference with a contract, and wanton and intentional conduct, and seeking an order for an accounting and declaratory relief. Apollo counterclaimed against Armstrong alleging violation of the Uniform Trade Secrets Act, misappropriation of trade secrets, tortious interference with business and contractual relations, conversion, defamation, and breach of agreement.
 {¶ 3} In the course of discovery, Armstrong issued interrogatories, requests for admissions, and requests for the production of documents to defendants. Defendants objected that Armstrong was seeking the discovery of Apollo's confidential business information. In particular, the defendants objected to the following discovery requests: interrogatories requesting Apollo's gross revenues for the years 1994 to 2001 and the identification of all products manufactured and sold by Apollo; requests for the production of a list of Apollo's customers from 1995 to 2001, of Apollo's gross sales from 1991 to 2001, of Apollo's monthly invoice registers from 1991 to 2001, of all documents showing the base rate of compensation and commissions paid to Armstrong during his employment by Apollo, of Apollo's scrap/rework loss reports from 1991 to 2001, of Apollo's open orders for the year 2001, and of all employee agreements for sales representatives entered into by Apollo from 1991 to 2001.
 {¶ 4} The parties were unable to resolve the discovery dispute. In response to Armstrong's discovery requests, the defendants objected that every request sought information that is "confidential and/or privileged" and moved for a protective order pursuant to Civ.R. 26(C). Defendants sought an order that the information requested by Armstrong be "`disclosed only in a designated way' as provided for within Civ.R. 26(C)(7) through in camera inspection by this court" and "that any information and/or documents disclosed must be limited to `attorneys' eyes only' following the court's in camera inspection." The trial court granted, in part, and denied, in part, the defendants' motion as follows: "[A]lthough there may be potential discovery issues involving trade secrets, Defendants' Motion for Protective Order is overly broad. Defendants[`] contention that all the information requested by Plaintiff is `confidential' and any information disclosed `must be limited to "attorneys' eyes only"' is impractical. Moreover, Defendant Apollo's objection to every single interrogatory, admission and production request is disingenuous. Notwithstanding the aforementioned, this Court Orders that, pursuant to Civ.R. 26(C)(7) and under penalty of contempt, the use of any discoverable information shall be limited to the instant action." The trial court also ordered defendants to respond to Armstrong's discovery within fourteen days.
 {¶ 5} The defendants timely appeal and raise three assignments of error.
 {¶ 6} "[1.] The trial court erred by ordering the disclosure of confidential, proprietary and/or trade secret information to Armstrong without the requested in camera inspection and/or `attorneys' eyes only' limitation.
 {¶ 7} "[2.] The trial court erred by denying appellants' motion for protective order due to the inevitable disclosure that will result from Armstrong's access to the confidential, proprietary, trade secret information.
 {¶ 8} "[3.] The trial court erred by denying appellants' motion for protective order because it was overly broad, impractical and/or moot."
 {¶ 9} Preliminary to addressing these assignments of error, we must address the issue of whether the trial court's December 4, 2001 judgment entry constitutes a final appealable order. The requirement that courts of appeals may only review final orders is jurisdictional. Ohio Constitution, Article IV, Section 3(B)(2) ("[c]ourts of appeal shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse * * * final orders of the courts of record inferior to the court of appeals within the district"). R.C. 2505.02(B)(4) provides, in part, that "[a]n order is a final order * * * when it is * * * [a]n order that grants or denies a provisional remedy and to which both of the following apply:
 {¶ 10} "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 {¶ 11} "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." See, also, Statev. Muncie, 91 Ohio St.3d 440, 446, 2001-Ohio-93. A "provisional remedy" is defined as a "proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of a privileged matter, or suppression of evidence." R.C.2505.02(A)(3).
 {¶ 12} It is well-established that, in addition to encompassing the discovery of privileged matter, the term "provisional remedy" also encompasses confidential information such as trade secrets. Gibson-Myers Assoc., Inc. v. Pearce (Oct. 27, 1999), 9th Dist. No. 19358, 1999 Ohio App. LEXIS 5010, at *6 (trade secrets); Walker v. Firelands CommunityHosp., 6th Dist. No. E-03-009, 2003-Ohio-2908, at ¶ 14 (medical records); Johnson v. Univ. Hosp. of Cleveland, 8th Dist. No. 80117, 2002-Ohio-1396, 2002 Ohio App. LEXIS 1428, at *5 (quality assurance information); Cuervo v. Snell (Sep. 26, 2000), 10th Dist. Nos. 99AP-1442, 99AP-1443, and 99AP-1458, 2000 Ohio App. LEXIS 4404, at *6-*7 (attorney-client privilege).
 {¶ 13} "Trade secrets" are defined by the Revised Code as "information, including the whole or any portion or phrase of * * * any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that * * * derives independent economic value * * * from not being generally known to * * * persons who can obtain economic value from its disclosure or use[, and] is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." R.C. 1333.61(D). Here, the trial court determined that Armstrong's discovery requests potentially involved information constituting trade secrets. We agree. The names and addresses of Apollo's customers, as well as the details of their business relationship, are material from which Apollo's competitors are able to obtain economic value. Particularly in the area of sales in which Armstrong was employed, such information would aid a competitor in competing for Apollo's business, since the competitor would be aware of the products and prices against which they were competing. We also find that Apollo made reasonable efforts to maintain the secrecy of this information by having Armstrong sign the customer protection agreement as a condition of his employment by Apollo.
 {¶ 14} Armstrong argues that not all of the information he requested would qualify as trade secrets. The trial court did not attempt to distinguish what information sought by Armstrong constituted trade secrets and what information did not. We agree that the broad scope of the trial court's protective order ("the use of any discoverable information shall be limited to the instant litigation") will certainly include information that does not constitute trade secrets. This fact, however, does not prevent that part of the order that does apply to Apollo's trade secrets from being a final order.
 {¶ 15} Not every provisional remedy is a final order. Ingram v. AdenaHealth Sys., 144 Ohio App.3d 603, 605, 2001-Ohio-2537. In addition to being a provisional remedy, the lower court's order must also determine the action as to the provisional remedy and deny Apollo an effective remedy if appealed after final judgment. R.C. 2505.02(B)(4)(a) and (b). We find that the trial court's order determines the action as to the provisional remedy, i.e. the order settles the discovery dispute between the parties. Armstrong argues, however, that the trial court's order adequately protects the privileged information from harmful disclosure by limiting its use to the instant litigation under penalty of contempt. Therefore, Armstrong maintains, Apollo has an effective remedy even though Armstrong is allowed discovery of Apollo's trade secrets. We disagree. The statute provides that Apollo must have an effective remedy "following final judgment as to all proceedings, issues, claims, and parties in the action." R.C. 2505.02(B)(4)(b). Part of Apollo's claims in its motion for a protective order is that discovery be limited to "attorneys' eyes only" and take place only after an in camera inspection of the information. Since the lower court's order allows for the inspection of the discovery by Armstrong himself, as well as his attorneys, and since that order denied defendants an in camera inspection, defendants would not have an effective remedy as to allissues raised in the current proceeding.
 {¶ 16} Accordingly, we find that the trial court's December 4, 2001 judgment entry is a final, appealable order pursuant to R.C. 2505.02(B)(4).
 {¶ 17} Defendants' first assignment of error challenges the form of the protective order issued by trial court. The Civil Rules authorize a trial court, "for good cause shown," to "make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including * * * that a trade secret * * * not be disclosed or be disclosed only in a designated way." Civ.R. 26(C)(7). In the regulation of discovery, the trial court has discretionary power and its decisions will not be overturned absent an abuse of that discretion. Mauzy v. Kelly Services, Inc., 75 Ohio St.3d 578,592, 1996-Ohio-265 (citations omitted); State ex rel. Daggett v.Gessaman (1973), 34 Ohio St.2d 55, 57. "Despite this broad discretion held by trial courts in discovery matters, trial courts must consider the interests of parties seeking discovery and the interests of parties and nonparties resisting discovery." Martin v. The Budd Co. (1998),128 Ohio App.3d 115, 119.
 {¶ 18} In the present case, we find that the trial court did not abuse its discretion by granting a protective order that limited the use of Apollo's confidential trade secret information to the present litigation under penalty of contempt. The breadth of the trial court's order has been approved by other courts as adequately protecting the disclosure of trade secrets. Alpha Benefits Agency, Inc. v. King Ins. Agency, Inc.
(1999), 134 Ohio App.3d 673, 683 (noting that a court may regulate the discovery of trade secrets by ordering "that [the] use of the discovered information be limited to the lawsuit" and by "limit[ing] the persons who have access to the information"); Majestic Steel Serv., Inc. v. Disabato
(Dec. 16, 1999), 8th Dist. No. 76521, 1999 Ohio App. LEXIS 6047, at *7-*8 (noting that a court is "well within its discretion to limit the scope of discoverable [trade secret] information to trial issues only and to restrain, under penalty of contempt, use of the disputed information for any purpose other than the instant litigation"). Moreover, we find the court's protective order to be consistent with the protection afforded trade secrets under Ohio's Uniform Trade Secrets Act, which provides that the court may preserve the secrecy of an "alleged trade secret by reasonable means that may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval." R.C. 1333.65.
 {¶ 19} The defendants argue that the trial court's protective order does not provide adequate protection because Armstrong has already demonstrated his willingness to divulge Apollo's trade secrets. Therefore, defendants argue, any discovery of Apollo's trade secrets must be limited to "attorneys' eyes only." Defendants base their allegations on the decision of the unemployment compensation review commission that heard Armstrong's application for benefits. That decision reports, in its findings of fact, Apollo's sales figures for the years 1998, 1999, and 2000. The decision itself does not reveal the source of this information. Apollo claims that these figures constitute trade secret information that Armstrong must have taken during his employment with Apollo. Apollo further notes that Armstrong is currently working for one of Apollo's competitors and has potentially disclosed this information to the competitor. Given Armstrong's willingness to divulge confidential information and his employment by a business competitor, Apollo asserts the necessity of preventing Armstrong from personally viewing discoverable trade secret information.
 {¶ 20} We disagree. We do not find that Apollo's sales figures constitute trade secrets as defined in R.C. 1333.61. There is no evidence that Apollo made any reasonable efforts to maintain the secrecy of this information and it is not obvious what independent economic value Apollo's competitors might derive from knowing these figures. The review commission's decision does not reveal the source of this information or even if these figures represent net or gross sales. Even if Armstrong was the source of the figures, there is no evidence that he obtained this information by misappropriating it from Apollo. In sum, Apollo's evidence that Armstrong would be likely to disregard the trial court's order restricting the use of discoverable material, which, as noted above, includes confidential as well as non-confidential material, under penalty of contempt, is highly speculative. Apollo has failed to demonstrate the court's order would fail to adequately protect its interests and we will not presume in advance the violation of the court's order by any of the parties involved.
 {¶ 21} Defendants also argue the trial court's order is overly broad because it fails to limit discovery to information that was relevant to the underlying proceeding. In their motion for a protective order, however, defendants made no argument regarding the relevancy of Armstrong's discovery requests. Instead, defendants relied on the overly broad argument that all the information requested by Armstrong was confidential. We need not consider on appeal arguments that were not raised and, therefore, not considered below. Gamiere v. Kayko, 11th Dist. No. 2002-T-0086, 2003-Ohio-3066, at ¶ 14 (citations omitted). The first assignment of error is overruled.
 {¶ 22} Under the second assignment of error, defendants essentially repeat their argument that requiring them to respond to Armstrong's discovery requests would result in inevitable and irreparable harm to Apollo. Defendants add that, under the doctrine of inevitable disclosure, courts have often granted injunctive relief. For the reasons stated above, we find that defendants have failed to prove that the discovery of trade secret information under the court's protective order would inevitably lead to the disclosure of that information. The second assignment of error is overruled.
 {¶ 23} Under the third assignment of error, defendants argue that they are entitled to an in camera inspection given the sensitive nature of the information sought for discovery. We disagree. Much of defendants' argument implies that trade secret information is not normally subject to discovery. This is incorrect. Although confidential, trade secret information is not absolutely privileged. Svoboda v. Clear ChannelCommunications, Inc., 6th Dist. No. L-02-1149, 2003-Ohio-6201, at ¶ 19. The disclosure of such information in discovery is contemplated both by Civ.R. 26(C) and by R.C. 1333.65, provided its secrecy is preserved. In the present case, the trial court found that an in camera inspection would be impractical. Although the trial court did not explain this finding, defendants sought to include all information requested by Armstrong under the protective order. Granting defendants' request would mean that all information produced in discovery, whether a trade secret or not, would have to be inspected in camera. Such a result would be impractical.
 {¶ 24} Moreover, since we find that the trial court's order adequately protects the secrecy of Apollo's trade secrets, the evidence in the record does not demonstrate how an in camera inspection would be necessary in these circumstances.
 {¶ 25} Finally, defendants object to the trial court's statement that the motion for protective order is moot as to defendants John and Draga Marusic and Terry Hynds as the court has denied these defendants' motion for judgment on the pleadings. Defendants argue that since these individuals are still parties to the action, the protective order must apply to them and to any information they produce in discovery. The motion for a protective order is not moot as to the individual defendants simply because the court has denied their motion for judgment on the pleadings. The reasons for the protective order apply equally to the individually named defendants as to Apollo. To this limited extent, we reverse the decision of the trial court.
 {¶ 26} In the interest of guaranteeing that the intent of the trial court's protective order is understood and complied with by all parties, we are remanding this case with instructions to the trial court to amend its December 4, 2001 judgment entry so as to make clear that the protective order applies equally to all parties to the action, including John Marusic, Draga Marusic, and Terry Hynds.
 {¶ 27} In regards to the issue of whether the protective order is moot as to defendants John Marusic, Draga Marusic and Terry Hynds, the decision of the trial court is reversed and this case is remanded. The trial court is instructed to amend its December 4, 2001 judgment entry so as to make clear that the protective order applies equally to all parties to the action, including John Marusic, Draga Marusic, and Terry Hynds. In all other respects, the judgment of the Lake County Court of Common Pleas is affirmed.
Rice, J., concurs.
O'Neill, J., concurs in judgment only.