[Cite as *Gauthier v. Gauthier*, 2019-Ohio-4397.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| SU KANG GAUTHIER, | : | CASE NO. CA2018-09-118 |
| Appellee, | : | O P I N I O N<br>10/28/2019 |
| | : | |
| - vs - | : | |
| | : | |
| FORREST P. GAUTHIER, | : | |
| Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 07DR31415

Robert A. Klingler, Co., L.P.A., Robert A. Klingler, 525 Vine Street, Suite 2320, Cincinnati, Ohio 45202, for appellee

Charles K. Fischer, 3727 Maple Park Avenue, Cincinnati, OH 45209, for appellant

Thomas E. Grossmann, 4533 Morris Court, Mason, Ohio 45040, for appellant

**M. POWELL, J.**

{¶ 1} Appellant, Forrest Gauthier, appeals a decision of the Warren County Court of Common Pleas granting a motion to compel discovery filed by his former wife and appellee, Su Kang Gauthier.

{¶ 2} The parties were divorced on March 3, 2009. Forrest is the "sole member" of Tesseron, Ltd., a corporate entity that owns patents. At the time Su filed for divorce on September 27, 2007, Tesseron owned multiple patents, had pending patent applications, and was in the process of developing patents and completing patent applications for submission. The foregoing constituted the Marital Patent Portfolio ("MPP"). Prior to their divorce being finalized, the parties entered into a Full Text Separation Agreement ("FTSA"). The FTSA divided the parties' personal and marital property and provided that Forrest retained ownership of Tesseron and its assets, including the MPP.

{¶ 3} Tesseron licenses its patents and brings patent infringement actions and other actions to enforce its patents and patent licensing. The licensing and enforcement actions generate significant income. Pursuant to Section 7.11 of the FTSA, Su was given the right to participate in such actions. Su's participation required that she contribute to financing the actions and share in the proceeds from any successful actions. Should Su not participate in the actions, she was entitled to 20 percent of the net proceeds received by judgment, settlement, or license fees.

{¶ 4} Section 7.12 of the FTSA provided that "[i]n the event Forrest transfers all or a portion of his ownership in the [MPP] to another person or entity, Forrest shall pay Su, as a separate class of spousal support, a sum equal to 20% of the value of the consideration Forrest receives for the transfer of the [MPP]." Section 7.12 further provided that the trial court retained "continuing jurisdiction to determine the value of the consideration Forrest receives for such transfer."

{¶ 5} Section 8.1 of the FTSA provided that any proceeds received by Su pursuant to Sections 7.11 or 7.12 of the FTSA are considered spousal support. Section 8.4 of the FTSA provided that "each party hereby forever waives his and her right to seek spousal support from the other in the future." Section 8.4 further provided that other than as set

forth in Sections 7.11 and 7.12, "the amount and terms of the spousal support to be paid by Forrest to Su shall never be increased, altered, modified or changed in any manner by any Court for any reason, and jurisdiction shall not be reserved to any Court to make any such change[.]"

{¶ 6} In January 2010, the parties entered into an addendum agreement ("Addendum") to resolve disputes that had arisen regarding their rights and obligations under several sections of the FTSA, including Section 7.11. Specifically, Paragraph 6 of the Addendum "expressly eliminate[d] any and all of Su's rights, claims, consideration and benefits set forth in and arising out of Section 7.11 of the FTSA and replace[d] them solely and only with the rights, claims, consideration and benefits set forth in" Paragraph 6 as follows:

> Forrest shall pay to Su, as a separate class of spousal support, a sum equal to 20% of the Net Proceeds * * * received by Tesseron from a judgment, license or settlement received from any third party entity after the [Addendum's] Effective Date[.] * * * Su expressly waives any right to participate in any way whatsoever (e.g., no involvement in decision making on any level, no status updates, no participation in events, no financial recovery except as specifically set forth in this provision, no communications with parties, no communications with counsel, no review of documents, et cetera) in any future claims, licensing activities or litigation arising under any part of the [MPP] * * * against any third parties except for the receipt of monies specifically called for in this section.

{¶ 7} In other words, Paragraph 6 eliminates Su's rights to participate in patent enforcement, infringement, and licensing proceedings under Section 7.11 of the FTSA. In lieu of these rights, Su is entitled to 20 percent of the net proceeds received by Tesseron from a judgment, license, or settlement with or from a third-party entity on or after January 7, 2010, the Addendum's effective date. The Addendum did not replace or modify Section 7.12 of the FTSA.

{¶ 8} On November 29, 2016, Su filed a motion for contempt against Forrest, simply

alleging that Forrest "had failed and refused to fulfill certain spousal support obligations set forth in the [FTSA] * * * which was modified by [the] [A]ddendum[.]" The motion explained that its lack of specificity was because of a confidentiality provision in both documents barring their public disclosure and filing in the trial court. Su sought leave to file a supplemental memorandum, the FTSA, and the Addendum under seal. The FTSA and Addendum were eventually filed with the trial court.

{¶ 9} In April 2017, Forrest filed a response to the contempt motion. Upon stating that Su's contempt motion was apparently based upon a claim he had transferred his ownership interest in certain patents to a third party, Forrest asked that the motion be dismissed "based upon the dispositive records of the United States Patent and Trademark Office ("USPTO")." Forrest asserted that the USPTO website clearly showed he was the owner of the patents in question. Forrest provided a link to the USPTO website and stated that the trial court and Su "can independently look at the USPTO public record cited."

{¶ 10} On March 15, 2018, Su filed a supplemental memorandum in support of her contempt motion. Su claimed that following the parties' divorce, Forrest initiated several federal lawsuits to enforce MPP patent rights; at least one of those lawsuits settled; and Su has not been paid her share of the settlement pursuant to Paragraph 6 of the Addendum. Su stated that despite her requests, Forrest has only provided one heavily redacted settlement agreement that has no date or settlement amount, and has otherwise refused to provide any documentation regarding the status of the other lawsuits.

{¶ 11} Su further claimed that Tesseron had transferred ownership of the MPP to Forrest; Forrest subsequently granted an exclusive license and all beneficial ownership rights to Acacia Research Group, LLC; in turn, Acacia assigned those rights to Industrial Print Technologies, LLC ("IPT"); and IPT was a named party in several federal lawsuits involving litigation of the MPP and the sole plaintiff in at least one of the lawsuits.

- 4 -

{¶ 12} According to the complaints filed in the above lawsuits, Forrest did not have "any right to sue for or collect past, present and future damages or to seek and obtain injunctive or any other relief for infringement of the [patents]."[1]  Furthermore, IPT alleged that its patent rights included

> the worldwide, exclusive right and license to make, have made, use, import, offer to sell, and sell products covered by the [patents], subject only to the limited rights of prior licensees and the limited license back to [Forrest].  IPT owns the exclusive right to grant sublicenses, to sue for and collect past, present and future damages and to seek and obtain injunctive or any other relief for infringement by any party of any claim of the [patents].  IPT further owns the exclusive right to exercise its sole judgment to decide to institute enforcement actions against any or all persons or entities that IPT believes are infringing the [patents], the exclusive right to bring suit to enforce the [patents], and the exclusive right to settle any claims made under the [patents].  IPT also owns the sole right to select counsel, to direct all litigation including this action, and to negotiate and determine the terms of any settlement or other disposition of all litigation including this action.  IPT also owns the sole control over reexaminations and continuing prosecution of the [patents] and related patent applications.

{¶ 13} Su asserted that the foregoing constituted a "transfer of all or a portion of [Forrest's] ownership in the MPP" to another person or entity, thereby triggering Section 7.12 of the FTSA and entitling Su to 20 percent of the consideration Forrest received for the transfer.  Su further asserted that she had "repeatedly requested copies of all contracts and agreements between [Forrest], Tesseron, and the licensees or assignees that would demonstrate [Forrest's] continuing interest in the patent litigation and its proceeds[.]"  However, Forrest had refused to provide any information, insisting he remained the owner of the patents and that Section 7.12 of the FTSA was not implicated.

{¶ 14} On March 17, 2018, Su served requests for admissions, interrogatories, and

---

1. Su attached one of those complaints to her supplemental memorandum in support of her contempt motion and noted that "[e]ach complaint [filed in the federal lawsuits] contains the same allegation, with respect to the patents at issue."

- 5 -

document requests upon Forrest, seeking documents and information related to the issues raised in her contempt motion, including the status of Forrest's rights in or ownership of the MPP. Forrest responded to the requests for admissions but objected to each of the document requests and to all of the interrogatories.

{¶ 15} Consequently, Su filed a Civ.R. 37 motion to compel discovery on July 26, 2018, asserting she could not enforce her rights under the FTSA and Addendum without the requested information. That same day, the trial court sought to schedule a hearing on the motion to compel and provided several hearing dates to the parties. Forrest's attorney informed the trial court that a hearing could not be scheduled before August 15, 2018, and that they would respond to Su's motion to compel. The trial court granted 14 days for Forrest to respond to the motion.

{¶ 16} On August 14, 2018, Forrest filed his response to the motion to compel. Forrest asserted that Su's motion to compel was based upon a baseless and frivolous contempt motion because the USPTO assignment database plainly showed that Forrest remained the owner of the MPP. Forrest stated that the USPTO records were "dispositive as to [patent] ownership," and that the trial court and Su "can independently look at the USPTO public record." Forrest further asserted that Su had waived her right to review the requested documents pursuant to Paragraph 6 of the Addendum.

{¶ 17} After granting 14 days for Forrest to respond to the motion to compel, the trial court once again provided several hearing dates to the parties, and on August 18, 2018, issued an order that "all parties and counsel * * * be present at all future court dates due to the complexity of [the] case." That same day, Forrest asked to teleconference from Florida where he lives. The request was denied. The trial court then proposed several hearing dates for September. On August 24, 2018, Forrest replied he could not attend a hearing until early October due to family, personal, and business obligations. That same day, the

trial court granted Su's motion to compel.

{¶ 18} In granting Su's motion to compel, the trial court noted that Forrest's arguments in opposition to the motion to compel mostly dealt with the merits of the underlying contempt motion, which was filed in November 2016 and which was "currently set for hearing on October 24, 2018." The trial court further noted,

> The Court has been attempting to get this matter scheduled for hearing with counsel and the parties on the Motion to Compel since July 26, 2018. According to [Forrest], his work and social calendar are too full in order to allow for him to appear at any of the proposed dates that are available on the Court's calendar (see attached email from [Forrest's] attorney). Therefore, the Court finds [Su's] Motion well taken and ORDERS * * * Forrest Gauthier to properly respond to all discovery requests within seven (7) days of the date of this Order. Failure to comply with this Order will result in sanctions being leveled against [Forrest].

{¶ 19} Forrest now appeals, raising nine assignments of error.[2] To facilitate the disposition of this appeal, several assignments of error will be addressed in tandem.

{¶ 20} Assignment of Error No. 1:

{¶ 21} THE TRIAL COURT'S ORDER GRANTING DISCOVERY OF CONFIDENTIAL DOCUMENTS IS ERRONEOUS WHEN IT IS BASED UPON A CONTEMPT MOTION THAT IS VOID AND CONTRARY TO THE PUBLIC RECORD.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE TRIAL COURT'S ORDER GRANTING DISCOVERY OF CONFIDENTIAL DOCUMENTS IS ERRONEOUS BECAUSE THE COURT DID NOT TAKE NOTICE OF THE FACT THAT FORREST IS THE OWNER OF THE MPP.

{¶ 24} In his first assignment of error, Forrest argues that the trial court erred in granting Su's motion to compel because the basic claim in her contempt motion that Forrest

---

2. Forrest timely appealed the trial court's order granting Su's motion to compel. This court initially dismissed the appeal. However, upon Forrest's application for reconsideration, this court reinstated Forrest's appeal. *Gauthier v. Gauthier*, 12th Dist. Warren No. CA2018-09-118 (Nov. 26, 2018) (Entry Granting Motion to Reinstate Appeal).

transferred ownership of the MPP to another person or entity is easily disproven by consulting the USPTO assignment database which is open to public inspection. Forrest asserts that the USPTO assignment database is dispositive of the issue of ownership of the MPP and that it plainly reflects that he remains the sole owner of the MPP. Forrest further asserts that he merely licensed the MPP to others. In his first and second assignments of error, Forrest further argues that the trial court erred in failing to take judicial notice of his ownership of the MPP based upon the USPTO assignment database.

{¶ 25} 35 U.S.C. 281 provides that '[a] patentee shall have remedy by civil action for infringement of his patent." "When the entity that holds legal title to the patent makes an *assignment of all substantial rights* under the patent, then that assignee is deemed the effective patentee under 35 U.S.C. § 281 with effective title to the patent, and alone has standing to maintain an infringement suit in its own name." (Emphasis sic.) *Keranos, LLC v. Silicon Storage Technology, Inc.*, 797 F.3d 1025, 1031 (Fed.Cir.2015).

{¶ 26} In support of her motion to compel and on appeal, Su argues that Forrest has assigned significant ownership rights in the MPP to another entity, IPT, including Forrest's rights "to sue for or collect past, present and future damages or to seek and obtain injunctive or any other relief for infringement of the [patents]," "to decide to institute enforcement actions against any or all persons or entities that * * * are infringing the [patents]," and "to bring suit to enforce the [patents], and * * * to settle any claims made under the [patents]." Su also argues that Forrest has further assigned to IPT "the sole right to select counsel, to direct all litigation * * *, and to negotiate and determine the terms of any settlement or other disposition of all litigation including this action," and "the sole control over reexaminations and continuing prosecution of the [patents] and related patent applications." Su supported the foregoing assertions by attaching to her contempt motion the complaints IPT filed in federal patent litigation.

{¶ 27} Section 7.12 of the FTSA provides that "[i]n the event Forrest transfers all or a portion of his ownership in the [MPP] to another person or entity," Su is entitled to receive 20 percent "of the value of the consideration Forrest receives for the transfer of the [MPP]." 37 C.F.R. 3.1. defines an assignment as "a transfer by a party of all or part of its right, title and interest in a patent [or] patent application[.]" An assignment of a patent "is the transfer to another of a party's entire ownership interest or a percentage of that party's ownership interest in the patent." *See Manual of Patent Examining Procedure*, Section 301 (Rev. E9_R-08.2017).[3] The extensive assignment of patents rights from Forrest to IPT described above raises an issue as to whether Forrest has transferred significant beneficial rights of ownership in the MPP and whether he retains any meaningful rights in the MPP. Forrest asserts, however, that the USPTO assignment database is dispositive of the issue of ownership of the MPP and that it plainly reflects that he remains the owner of the MPP.

{¶ 28} 35 U.S.C. 261 provides in relevant part that

> The Patent and Trademark Office shall maintain a register of interests in patents and applications for patents and shall record any document related thereto upon request, and may require a fee therefor.
>
> * * *
>
> A certificate of acknowledgment * * * shall be prima facie evidence of the execution of an assignment, grant or conveyance of a patent or application for patent.
>
> An interest that constitutes an assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent

---

3. The *Manual of Patent Examining Procedure* defines the licensing of a patent as transferring "a bundle of rights which is less than the entire ownership interest, e.g., rights that may be limited as to time, geographical area, or field of use." *See* Section 301. "A patent license is, in effect a contractual agreement that the patent owner will not sue the licensee for patent infringement if the licensee makes, uses, offers for sale, sells, or imports the claimed invention, as long as the licensee fulfills its obligations and operates within the bounds delineated by the licensing agreement." *Id.*

purchase or mortgage.

{¶ 29} "The issuance of a patent by the [US]PTO is prima facie proof of the patentee's legal title." *Aerotel, Ltd. v. IDT Corp.*, 486 F.Supp.2d 277, 281 (S.D.N.Y.2007). "The mere recording of an assignment in the [US]PTO, on the other hand, does not establish a valid assignment, or legal title." *Id.* While the recording of an assignment of a patent with the USPTO is a routine matter and protects the applicant against claims by later assignees of the patent, it is not a determination by the USPTO of the validity of the document or the effect that document has on title to a patent. *See* 37 C.F.R. 3.54; *Filtroil, N. Am., Inc. v. Maupin*, Fed.Cir. Nos. 99-1361, 99-1387, and 99-1418, 2000 U.S. App. LEXIS 5759, *10 (Mar. 30, 2000), citing 35 U.S.C. 261. By its very terms, 35 U.S.C. 261 is only a recording statute. *Tm Patents, L.P. v. IBM*, 121 F.Supp.2d 349, 365 (S.D.N.Y.2000). The USPTO assignment records simply create a presumption of ownership and are not dispositive. *See SiRF Tech., Inc. v. Internatl. Trade Comm.*, 601 F.3d 1319 (Fed.Cir.2010).

{¶ 30} Nevertheless, Forrest argues that the trial court erred in failing to take judicial notice of his ownership of the MPP. In support of his argument, Forrest cites Evid.R. 201(D), which provides that "[a] court shall take judicial notice if requested by a party and supplied with the necessary information."

{¶ 31} Upon reviewing Forrest's responses to Su's contempt motion and motion to compel, we find that neither pleading requested the trial court to take judicial notice. In contrast to his Evid.R. 201(D) post-appeal motion which expressly requested the trial court to take judicial notice of the USPTO assignment database, Forrest's responses, while providing a link to the USPTO assignment database, simply noted that the trial court and Su could independently look at the USPTO public records. Further, neither response cited Evid.R. 201. In any event, given the fact that the USPTO assignment records are not

dispositive of ownership and in light of the significant issue raised by Su regarding whether Forrest effectively transferred ownership of the MPP to another person or entity by transferring substantial beneficial rights of ownership in the MPP, we find no error in the trial court's failure to take judicial notice. For the same reasons, we decline Forrest's request that we take judicial notice of Forrest's ownership of the MPP based upon the USPTO assignment database.

{¶ 32} Forrest's first and second assignments of error are overruled.

{¶ 33} Assignment of Error No. 3:

{¶ 34} THE TRIAL COURT'S ORDER GRANTING DISCOVERY OF CONFIDENTIAL DOCUMENTS IS ERRONEOUS BECAUSE ANY PROBATIVE VALUE OF THOSE DOCUMENTS IS OUTWEIGHED BY PREJUDICIAL IMPACT.

{¶ 35} Forrest argues the trial court erred in granting Su's motion to compel because the court failed to weigh the probative value, if any, of the confidential licensing documents Su seeks against the prejudicial impact of their disclosure as required under Evid.R. 403.

{¶ 36} Evid.R. 403 relates to the admissibility of evidence at trial, and not to whether evidence is discoverable. The scope of discovery is governed by Civ.R. 26(B)(1), which provides

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party[.] It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

{¶ 37} The information and documents sought by Su do not fall within any of the enumerated privileged communications of R.C. 2317.02. While the information sought may be considered a "trade secret" as defined in R.C. 1333.61(D), Forrest has not claimed that

- 11 -

the information is subject to trade secret protection. In any event, although confidential, trade secret information is not absolutely privileged. *Armstrong v. Marusic*, 11th Dist. Lake No. 2001-L-232, 2004-Ohio-2594, ¶ 23. Moreover, Forrest could have sought a protective order under Civ.R. 26(C) but did not do so.

{¶ 38} Forrest's third assignment of error is overruled.

{¶ 39} Assignment of Error No. 4:

{¶ 40} THE TRIAL COURT ERRED BY COMPELLING DISCOVERY BASED ON A BASELESS CONTEMPT MOTION THAT SEEKS TO CHANGE THE PARTIES' SPOUSAL SUPPORT AGREEMENTS.

{¶ 41} Assignment of Error No. 5:

{¶ 42} THE TRIAL COURT ERRED IN ISSUING AN ORDER TO COMPEL RELATED TO A CONTEMPT MOTION AS TO WHICH IT HAS NO JURISDICTION.

{¶ 43} Section 8.1 of the FTSA provides that any proceeds received by Su pursuant to Sections 7.11 or 7.12 of the FTSA are considered spousal support. Section 8.4 of the FTSA provides that "each party hereby forever waives his and her right to seek spousal support from the other in the future," and that other than as set forth in Sections 7.11 and 7.12 of the FTSA, "the amount and terms of the spousal support to be paid by Forrest to Su shall never be increased, altered, modified or changed in any manner by any Court for any reason, and jurisdiction shall not be reserved to any Court to make any such change[.]"

{¶ 44} In his fourth and fifth assignments of error, Forrest challenges the trial court's order to compel discovery, arguing it in effect modifies his spousal support obligation in violation of Section 8.4 of the FTSA. Specifically, Forrest asserts that because Su's contempt claim that he transferred all or part of his ownership in the MPP is plainly disproved by the dispositive USPTO public record, Su's contempt motion and related motion to compel in effect sought to modify and increase her spousal support beyond that provided

in the FTSA, and therefore, the trial court had no authority to modify spousal support pursuant to Section 8.4 of the FTSA.

{¶ 45} Contrary to Forrest's assertion, Su is not seeking to modify or increase the spousal support provided in Section 7.12 of the FTSA and Paragraph 6 of the Addendum. Rather, she is only seeking to ensure she receives the spousal support to which she is entitled, whether it be from patent litigation settlement or the transfer of all or a portion of Forrest's ownership in the MPP. In other words, Su is simply seeking to enforce her right to the spousal support as provided under the foregoing provisions. We note Forrest's argument that his spousal support obligation terminated on September 27, 2017, pursuant to Section 8.4 of the FTSA, and that Su is seeking spousal support beyond that date. However, Su may seek to enforce her right to spousal support which accrued prior to September 27, 2017, as provided by Section 7.12 of the FTSA and Paragraph 6 of the Addendum.

{¶ 46} Forrest's fourth and fifth assignments of error are overruled.

{¶ 47} Assignment of Error No. 6:

{¶ 48} THE TRIAL COURT ERRED WHEN IT GRANTED THE MOTION TO COMPEL WITHOUT HOLDING A HEARING.

{¶ 49} Forrest argues the trial court erred in granting Su's motion to compel without first holding a hearing. Forrest challenges the trial court's failure to hold a hearing, arguing it was improperly based upon Forrest's schedule while ignoring his argument that he is the owner of the MPP.

{¶ 50} We first note that "Civ.R. 37(A), which specifically addresses the procedure for filing a motion for an order compelling discovery, does not require that a hearing be held on the motion, unless expenses are awarded to the party favored by the trial court's motion disposition." *Mobley v. Pamer*, 7th Dist. Monroe No. 833, 2001 Ohio App. LEXIS 271, *9

(Jan. 25, 2001); *Entingh v. Old Man's Cave Chalets, Inc.*, 4th Dist. Hocking No. 08CA14, 2009-Ohio-2242, ¶ 17. The trial court granted Su's motion to compel without imposing an award of expenses. The trial court, therefore, was not required to hold a hearing and granting Su's motion without a hearing was within the court's discretion. *Mobley* at *10.[4]

{¶ 51} The general nature of the information sought by Su was apparent from her March 2018 supplemental memorandum in support of her 2016 contempt motion. On July 26, 2018, Su filed her Civ.R. 37 motion to compel. On August 14, 2018, Forrest filed a response, arguing that the motion to compel was based upon a frivolous contempt motion and was baseless as the USPTO assignment database plainly listed him as the owner of the MPP. The trial court granted Su's motion to compel ten days later, on August 24, 2018.

{¶ 52} The record shows that during a status conference held on July 17, 2018, the trial court warned the parties' attorneys that the parties would now be required to physically attend all hearings and that the court would not allow the case to "drag on." As soon as Su filed her motion to compel, the trial court sought to schedule a hearing on the motion. After granting 14 days for Forrest to respond to the motion, the trial court provided several hearing dates to the parties. The trial court further issued an order that "all parties and counsel * * * be present at all future court dates due to the complexity of [the] case." In response, Forrest asked to teleconference from Florida where he lives. The request was denied. The trial court then proposed several hearing dates for September. On August 24, 2018, Forrest replied he could not attend a hearing until early October because the month of September

---

4. Although they were not cited under the sixth assignment of error, Forrest cited three cases in the introduction to his assignments of error for the proposition that a trial court must conduct a hearing before compelling discovery of privileged or confidential information. *See Cargile v. Barrow*, 182 Ohio App.3d 55, 2009-Ohio-371 (1st Dist.); *Grace v. Mastruserio*, 182 Ohio App.3d 243, 2007-Ohio-3942 (1st Dist.); and *Armstrong v. Marusic*, 11th Dist. Lake No. 2001-L-232, 2004-Ohio-2594. All three cases involved privileges enumerated under R.C. 2317.02 or trade secrets. As stated earlier, the information sought by Su does not fall within a recognized privilege under R.C. 2317.02 and Forrest has not claimed that the information is subject to trade secret protection. We therefore decline to apply the foregoing cases.

already included a week-long family vacation, a nine-day trip to attend his mother's birthday, a two-day meeting, and a 12-day period hosting guests from Europe. That same day, noting the looming October 2018 hearing upon Su's contempt motion, the trial court granted Su's motion to compel. Given Forrest's unwillingness to accommodate any of the hearing dates suggested by the trial court, thereby giving priority to his calendar over the trial court's caseload and docket, we find that the trial court did not abuse its discretion in granting the motion to compel based upon the parties' filings and without conducting a hearing.

{¶ 53} We further note that although Forrest asserts that the information sought is so highly confidential and sensitive that he would be prejudiced and harmed by its production, there is nothing in the record to substantiate his assertion. Forrest made no request for an in camera inspection of the information. Nor did he seek to file the information under seal for the trial court's consideration on the motion to compel.

{¶ 54} Forrest's sixth assignment of error is overruled.

{¶ 55} Assignment of Error No. 7:

{¶ 56} THE TRIAL COURT ERRED BY ORDERING PRODUCTION OF CONFIDENTIAL RECORDS CONTROVERTING SUBSTANTIAL CONTRACTUAL RIGHTS WHICH CANNOT BE REMEDIED WITHOUT AN IMMEDIATE APPEAL.

{¶ 57} Forrest argues that the trial court's order compelling discovery of the documents Su seeks violates his contractual rights under Section 20.2 of the FTSA and Paragraph 6 of the Addendum. Section 20.2 provides that

> Forrest shall provide Su with summary documentation to support the payments made in accordance with this Agreement. The parties acknowledge and agree that confidentiality considerations and concerns may prevent Forrest or his counsel from providing such information other than in summary fashion. However, the documentation must be sufficiently detailed to provide verification of such payments.

{¶ 58} We find no merits to Forrest's arguments. Forrest has provided no

documentation to Su, much less "summary documentation" "sufficiently detailed to provide verification of * * * payments" "made in accordance with the [FTSA]." Furthermore, this action was initiated specifically because Forrest has not paid Su her share of settlements and consideration received by Forrest pursuant to Paragraph 6 of the Addendum and Section 7.12 of the FTSA. The documentation Su seeks is not only to verify the amount of payments to which she might be entitled pursuant to Paragraph 6 of the Addendum, but also to determine whether Forrest has transferred all or a portion of his ownership in the MPP thereby entitling her to a spousal support payment under Section 7.12 of the FTSA.

{¶ 59} Forrest further argues that Section 20.2 of the FTSA and Paragraph 6 of the Addendum prohibit the discovery Su seeks. We decline to construe the foregoing provisions as preventing Su from discovering the information necessary to prosecute a claim that Forrest has failed to comply with his spousal support obligation under the FTSA and Addendum. Furthermore, it is not clear that Paragraph 6 of the Addendum applies to Section 7.12 of the FTSA as asserted by Forrest. By its own terms, Paragraph 6 expressly eliminated Su's rights, claims, and benefits "set forth in and arising out of Section 7.11 of the FTSA and replace[d] them solely and only with the rights, claims, * * * and benefits set forth in" Paragraph 6. In his response in opposition to Su's motion to compel, Forrest stated that in exchange for receiving a lump sum under Paragraph 1 of the Addendum, Su agreed "she had no right to review documents relating rights contained in [Section] 7.11 of the FTSA."

{¶ 60} Even if Paragraph 6 applies to Section 7.12 of the FTSA, we find it simply bars Su from taking part in any licensing of MPP patents or litigation involving the MPP in contrast to her former rights to participate in patent enforcement, infringement, and licensing proceedings as previously allowed under Section 7.11 of the FTSA. As written, Paragraph 6 does not prohibit Su from seeking documentation once a licensing agreement has been

reached or once litigation has resulted in a judgment or settlement.

{¶ 61} Forrest's seventh assignment of error is overruled.

{¶ 62} Assignment of Error No. 8:

{¶ 63} THE ORDER TO COMPEL IS ERRONEOUS BECAUSE THE MOTION TO COMPEL WAS AN ABUSE OF PROCESS.

{¶ 64} Assignment of Error No. 9:

{¶ 65} THE ORDER TO COMPEL IS ERRONEOUS BECAUSE IT IS PART OF A MALICIOUS CONTEMPT PROSECUTION.

{¶ 66} In his eighth and ninth assignments of error, Forrest challenges the trial court's order to compel discovery, arguing that Su committed an abuse of process by using the trial court's power to compel for an ulterior motive. That is, Forrest asserts that Su filed her motion to compel for the ulterior purpose of circumventing the FTSA and Addendum and gaining access to confidential documents unrelated to her contempt motion Forrest further asserts that because Su's contempt motion is frivolous, malicious, and a sham, Su's motion to compel should not have been filed and should not have been granted by the trial court.

{¶ 67} "Abuse-of-process claims are claims that allege that a legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." *Mansour v. Croushore*, 194 Ohio App.3d 819, 2011-Ohio-3342, ¶ 11 (12th Dist.). Thus, abuse of process is designed to remedy the misuse or exploitation of the legal process after a party has properly initiated a lawsuit with probable cause. *See Hershey v. Edelman*, 187 Ohio App.3d 400, 2010-Ohio-1992 (10th Dist.). In order to succeed on an abuse of process claim, a plaintiff must establish that (1) a legal proceeding has been set in motion in proper form and with probable cause, (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, and (3) direct

damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer & Rowe Company, L.P.A.*, 68 Ohio St.3d 294, 298 (1994). "[T]he key consideration in an abuse of process action is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action." *Id.* at 300.

{¶ 68} We note that Forrest did not raise this claim when he opposed Su's motion to compel. Furthermore, Forrest has never asserted that Su's contempt motion was instituted with probable cause. To the contrary, Forrest has consistently asserted, and continues to so assert on appeal, that the contempt motion is frivolous, void, and a sham. Forrest's position that Su's filing of her contempt motion was baseless cannot sustain a cause of action for abuse of process. *See P.N. Gilcrest Ltd. Partnership v. Doylestown Family Practice, Inc.*, 9th Dist. Wayne No. 10CA0035, 2011-Ohio-2990.

{¶ 69} Forrest's eighth and ninth assignments of error are overruled.

{¶ 70} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.