[Cite as *Kyrkos v. Superior Beverage Group, Ltd.*, 2013-Ohio-4597.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99444**

## VASOULA KYRKOS, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## SUPERIOR BEVERAGE GROUP, LTD., ET AL.

DEFENDANTS-APPELLEES

### JUDGMENT:
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-778801 and CV-779946

**BEFORE:** E.T. Gallagher, J., Stewart, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:** October 17, 2013

**ATTORNEY FOR APPELLANT**

Russell A. Randazzo
1340 Sumner Avenue
Cleveland, OH 44115


**ATTORNEYS FOR APPELLEE**

Susan C. Hastings
Squire, Sanders & Dempsey
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304

Jerry R. Krzys
James L. Messenger
Richard J. Thomas
Henderson, Covington, Messenger,
Newman & Thomas, Co., L.P.A.
6 Federal Plaza Central
Youngstown, OH 44503

EILEEN T. GALLAGHER, J.:

{¶1} Appellant Vasoula Kyrkos ("Kyrkos") appeals a preliminary injunction partially enforcing a non-compete agreement that temporarily restricts her employment with RC Distributors, Inc. ("RC Distributors"). We find some merit to the appeal, affirm in part, and reverse in part.

{¶2} Appellee Superior Beverage Group, Ltd. ("Superior") hired Kyrkos as a sales representative to sell alcoholic beverages to upscale restaurants and bars. On January 15, 2009, six days after Kyrkos started the job, she signed a non-compete agreement that prohibited her from communicating with, and soliciting business from, Superior customers for a period of one year after her employment with Superior ended. The agreement also stated that the restriction applied throughout Superior's regional territory, which spanned 31 counties.

{¶3} After an initial orientation, Kyrkos underwent a two-week training period in which she made sales calls to clients with her direct supervisor, Torri Palko ("Palko"). Kyrkos received additional training on how to make presentations, made winery trips at Superior's expense, and had access to supplier websites. She was also trained on how to use a handheld device to transmit orders. Although not required, Kyrkos took a wine course sponsored by E&J Gallo to gain greater familiarity with the industry. Superior did not pay for the course.

**{¶4}** On August 18, 2011, Kyrkos sent Palko a resignation letter. The letter did not say anything negative about Superior and did not mention any new employment. Kyrkos claims she was involuntarily forced to resign. Superior maintains her poor performance was grounds for termination. Nevertheless, in September 2011, approximately one month after leaving superior, Kyrkos accepted a sales position with RC Distributors, one of Superior's competitors.

**{¶5}** RC Distributors assigned Kyrkos to a customer route that included eight of the same customers she serviced while at Superior. Superior claims its business from those accounts decreased $32,114 in the 12-month period after Kyrkos began working at RC Distributors. Superior alleged it first learned of Kyrkos's employment with RC Distributors in February 2012 when Palko saw her name next to RC Distributors in a sign-in book at a Union Club event.

**{¶6}** On February 12, 2012, Joseph McHenry ("McHenry"), Superior's Executive Vice President, sent a letter to RC Distributors regarding Kyrkos's non-compete agreement. As a result, RC Distributors allegedly sent a letter to each of the eight common customers informing them that Kyrkos would no longer be handling those accounts.

**{¶7}** In March 2012, Kyrkos filed a complaint against Superior claiming sex discrimination, hostile work environment, and conspiracy. She alleged Superior purposely made her work environment uncomfortable so she would resign and that

because Superior breached the terms of the non-compete agreement, it was unenforceable.

{¶8} In April 2012, Superior filed a complaint seeking a preliminary injunction, permanent injunction, and other relief to prevent RC Distributors from employing Kyrkos in any capacity.[1] It alleged that during Kyrkos's employment, Superior provided her with proprietary and confidential business information, including Superior's sales techniques, marketing methods, marketing plans and strategies, pricing, and customer lists. It further alleged that Kyrkos breached the terms of the non-compete agreement by working for RC Distributors within twelve months of leaving Superior. Superior's preliminary injunction sought to enjoin Kyrkos from working for RC Distributors for a period of one year.

{¶9} Following a hearing, the court granted Superior's claim for injunctive relief in part and denied it part. The court found the non-compete agreement was more restrictive than necessary to protect Superior's business interests and modified its terms to allow Kyrkos to continue working for RC Distributors while prohibiting her from soliciting any of the customer accounts she handled when she worked at Superior, including the eight customers common to Superior and RC Distributors, for a period of one year. The court further ordered that the one-year restriction period began on the effective date of the court's order.

---

[1] This case was consolidated with Kyrkos's action against Superior.

{¶10} After the court rendered its decision, Kyrkos filed a motion for new trial and a motion for security in the amount of $500,000 pursuant to Civ.R. 65(C). She also sought an order making the restrictive time period retroactive to March 2012 instead of the date of judgment. The court denied all these motions. Kyrkos now appeals and raises six assignments of error.

## Preliminary Injunction

{¶11} In the first assignment of error, Kyrkos argues the trial court erred in granting Superior the preliminary injunction.

{¶12} A party requesting a preliminary injunction must show that: (1) there is a substantial likelihood that the plaintiff will prevail on the merits, (2) the plaintiff will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction. *Cleveland v. Cleveland Elec. Illum. Co.*, 115 Ohio App.3d 1, 12, 684 N.E.2d 343 (8th Dist. 1996). The party seeking injunctive relief must establish its right to such relief by clear and convincing evidence. *Zavakos v. Zavakos Ents., Inc.*, 63 Ohio App.3d 100, 103, 577 N.E.2d 1170 (2d Dist. 1989).

{¶13} Further, in determining whether to grant injunctive relief, courts have recognized that no single factor is dispositive. *Cleveland Elec. Illum. Co.* at 14, citing *Royal Appliance Mfg. Co. v. Hoover Co.*, 845 F. Supp. 469 (N.D.Ohio 1994). The four factors must be balanced with the "flexibility which traditionally has characterized the law of equity." *Id.*, quoting *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d

100, 105 (6th Cir.1982). We will not disturb the trial court's judgment granting a preliminary injunction absent of an abuse of discretion. *Garono v. State*, 37 Ohio St.3d 171, 173, 524 N.E.2d 496 (1988).

## Irreparable Harm

{¶14} Kyrkos argues Superior failed to prove that without the injunction it would suffer irreparable harm. Irreparable harm is harm for which there is no plain, adequate, and complete remedy at law, and for which money damages would be impossible, difficult, or incomplete. *Cleveland Elec. Illum. Co.*, 115 Ohio App.3d at 14. "[A]dequate remedy at law 'means that the legal remedy must be as efficient as the indicated equitable remedy would be; that such legal remedy must be presently available in a single action; and that such remedy must be certain and complete.'" *Mid-America Tire, Inc. v. PTZ Trading Ltd.*, 95 Ohio St.3d 367, 2002-Ohio-2427, 768 N.E.2d 619, ¶ 81, quoting *Fuchs v. United Motor Stage Co., Inc.*, 135 Ohio St. 509, 21 N.E.2d 669 (1939), paragraph four of the syllabus.

{¶15} The trial court found Superior failed to demonstrate irreparable harm for a number of reasons, including the fact there was evidence of Superior's actual monetary damages. McHenry testified that during the first 12-month period of time that Kyrkos was employed by RC Distributors, Superior's sales to the eight common accounts decreased by $32,114. In its judgment entry and opinion, the court stated that "any lost profits suffered by Superior could be measured through appropriate valuation mechanisms." Still it granted the preliminary injunction.

{¶16} This court has specifically held that harm or a threat of harm is not irreparable if monetary damages can serve as an adequate remedy. *Jacono v. Invacare Corp.*, 8th Dist. Cuyahoga No. 86605, 2006-Ohio-1596, ¶ 38, citing *Fraternal Order of Police v. Cleveland*, 141 Ohio App.3d 63, 749 N.E.2d 840 (8th Dist. 2001); *Crestmont Cadillac Corp. v. GMC*, 8th Dist. Cuyahoga No. 83000, 2004-Ohio-488. Therefore, we agree Superior failed to establish by clear and convincing evidence that it would suffer irreparable harm if the court declined to issue a preliminary injunction.

{¶17} Notably, Superior did not assert its rights under the non-compete agreement for five months after Kyrkos started working for RC Distributors. Superior asserts it was unaware of Kyrkos's new employment during that five months. Kyrkos, however, testified that she happened to meet Gregg Shellhorn ("Shellhorn"), Superior's division manager for the Cleveland area, shortly after starting with RC Distributors and informed him of her new employment. She further testified that he sent her a text message that said he could not talk to her because she was working for a "competitor."

{¶18} Nevertheless, the preliminary injunction was not granted until 15 months after Kyrkos began working for RC Distributors. Due to a delay in setting a security amount, it was not until February 2013, more than 18 months after leaving Superior, that the preliminary injunction became effective. In *Premix, Inc. v. Zappitelli*, 561 F.Supp. 269, 278 (N.D.Ohio 1983), the court declined to grant injunctive relief where the defendant-former employee had already been employed by his new employer for "the better part of a year, and undoubtedly had divulged much of the proprietary information

he possessed" by the time the motion for preliminary injunction was heard. The "irreparable harm" had already been done and an injunction would no longer confer any benefit to the employer.

{¶19} Just as in *Premix*, Kyrkos had already been employed by RC Distributors for well over a year and allegedly caused harm to Superior before the court granted the injunction. As previously stated, McHenry testified that Superior's monetary losses totaled $32,114 during a 12-month period that Kyrkos was working for RC Distributors. Thus, because the non-compete agreement prohibited Kyrkos from working for a competitor for a period of one year after leaving Superior's employ, the total amount of monetary damages, which accrued during the course of one year, was complete and verifiable before the court granted the injunction.

{¶20} Furthermore, the evidence adduced at the hearing indicates Superior was not likely to prevail on the merits at the time of the preliminary injunction hearing. To prevail on the merits, Superior had to show that the restraint imposed by the non-compete agreement was reasonable. *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 25, 325 N.E.2d 544 (1975). In determining whether the restrictions are reasonable, the following factors should be considered:

> "'[t]he absence or presence of limitations as to time and space, * * *
> whether the employee represents the sole contact with the customer;
> whether the employee is possessed with confidential information or trade
> secrets; whether the covenant seeks to eliminate competition which would
> be unfair to the employer or merely seeks to eliminate ordinary competition;
> whether the covenant seeks to stifle the inherent skill and experience of the
> employee; whether the benefit to the employer is disproportional to the
> detriment to the employee; whether the covenant operates as a bar to the

employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment.'"

*Id.* at 25, quoting with approval while also overruling, in part, *Extine v. Williamson Midwest*, 176 Ohio St. 403, 406, 200 N.E.2d 297 (1964).

**{¶21}** A one-year time period for a covenant not to compete is reasonable. *Rogers v. Runfola & Assoc.*, 57 Ohio St.3d 5, 565 N.E.2d 540 (1991) (one year non-competition agreement for stenographer throughout Franklin county reasonable); *Shury v. Rocco*, 8th Dist. Cuyahoga No. 56214, 1989 Ohio App. LEXIS 1120 (Mar. 30, 1989) (two year non-competition agreement for bonding agent in Cuyahoga and adjacent counties reasonable).

**{¶22}** Kyrkos argues the restriction prohibiting her from contacting Superior customers within its 31-county territory is overly broad because she never serviced any Superior customers outside of Cuyahoga and Lorain counties. There is no evidence as to how many square miles encompass these 31 counties. Nevertheless, Kyrkos mostly sells RC Distributors' products to retail stores, whereas she sold Superior's products to restaurants and bars. Therefore, the 31-county space restriction would still provide Kyrkos a wide market in which to make her sales and is not, by itself, unreasonable.

**{¶23}** It is undisputed that Kyrkos did not have the sole contact with Superior's customers. McHenry and Shellhorn both testified that sales representatives like Kyrkos are not the sole customer contact. There was no evidence that Superior lost any clients as a result of Kyrkos's employment at RC Distributors and the court found that "Kyrkos

was not made privy to any trade secrets and that the customer information she did receive was for the most part publicly available." Therefore, these factors weigh against enforcement.

{¶24} With respect to unfair competition, the trial court cited *Brentlinger Ents. v. Curran*, 141 Ohio App.3d 640, 653, 752 N.E.2d 994 (2001), and *Willis Refrigeration*, *Air Conditioning & Heating, Inc. v. Maynard,* 12th Dist. Clermont No. CA99-05-047, 2000 Ohio App. LEXIS 102 (Jan. 18, 2000), and noted that "Ohio courts, under the circumstances similar to those in the present case, have refused to enforce non-compete agreements seeking to limit ordinary competition as opposed to advancing legitimate business interests." *Raimonde* holds that restrictive covenants are enforceable if they "seek to eliminate competition which would be unfair to the employer" but are not enforceable if they merely seek to eliminate ordinary competition. *Id*. at 25.

{¶25} Agreements not to compete that prevent an employee from using her general skills and experience in the marketplace weigh against enforcement. *Raimonde* at 25. *See also Am. Bldg. Serv., Inc. v. Cohen*, 78 Ohio App.3d 29, 34, 603 N.E.2d 432 (12th Dist. 1992) (refusing to enforce non-compete agreement's two-year prohibition on working for competitors). Although Kyrkos had some previous experience in the beverage industry selling coffee, she obtained knowledge and skills in the alcohol beverage industry as a result of her employment at Superior. Therefore, the court determined, this factor weighs in favor of enforcement. We agree. However, because Kyrkos was separated from Superior for 18 months before the preliminary injunction

went into effect, any benefit Superior would gain from the injunction at this point is disproportionate to the detriment to Kyrkos, who receives 10 percent commission on each sale.

{¶26} The court recognized that the non-compete agreement, as written, imposed unreasonable restrictions on Kyrkos's livelihood. It is for this reason, the trial court allowed Kyrkos to maintain her current employment at RC Distributors while prohibiting her from working on any accounts she handled at Superior. However, as previously stated, there is no evidence Superior would suffer irreparable harm without the preliminary injunction because the harm was already done, and Superior had an adequate remedy at law. There was also evidence that Kyrkos's income from RC Distributors is her sole means of support. The preliminary injunction limits Kyrkos's ability to earn a living because it limits the number of sales she can make. Under these circumstances, we find the trial court's judgment granting a preliminary injunction that restricted Kyrkos's employment at RC Distributors for twelve months from the effective date of its judgment was an abuse of discretion.

{¶27} The first assignment of error is sustained.

### Surety Bond

{¶28} In the sixth assignment of error, Kyrkos argues the trial court erred in failing to set an adequate security bond pursuant to Civ.R. 65(C) for her protection in the event this court reverses the trial court's judgment.

{¶29} Civ.R. 65(C) provides that "[n]o preliminary injunction is operative until the party obtaining it gives a bond executed by sufficient surety * * * to secure to the party enjoined the damages he may sustain, if it is finally decided that the order or injunction should not have been granted."

{¶30} When deciding the amount of the bond, the trial court "should be guided by the purpose underlying Rule 65(A), which is primarily to compensate the enjoined party for loss it suffers as a result of an improvidently issued injunction or restraining order." *Hoechst Diafoil Co. v. Nan Ya Plastics, Inc.*, 174 F.3d 411, 421 n.3 (4th Cir.1999).[2] However, the enjoined party is *only entitled to recover the amount of her provable damages* up to the amount of the security. *Id.* Although Civ.R. 65(C) makes security mandatory, it also "anticipates the exercise of discretion in determining the amount of the bond to be posted." *Gateway E. Ry. Co. v. Terminal RR. Assn.*, 35 F.3d 1134, 1141 (7th Cir.1994). We therefore review the trial court's decision on the bond amount for an abuse of discretion. *Id.*

{¶31} Kyrkos contends the court erroneously refused to take into account any loss of income she experienced by voluntarily choosing not to contact 72 customer accounts she serviced while working for RC Distributors. Kyrkos receives a 10 percent

---

[2] The staff notes to Civ.R. 65(C) indicate it was modeled after Fed.R.Civ.P. 65(C) and incorporates many of its provisions. Ohio courts have looked to the federal courts for guidance when applying this rule. *See, e.g., Vanguard Transp. Sys. v. Edwards Transfer & Storage Co. Gen. Commodities Div.*, 109 Ohio App.3d 786, 673 N.E.2d 182 (10th Dist. 1996); *Hopkins v. Kraft,* 4th Dist. Pickaway No. 85 CA 13, 1986 Ohio App. LEXIS 9055 (Oct. 10, 1986); *N. Elec. Co. v. United Steelworkers of Am.*, 28 Ohio App.2d 253, 277 N.E.2d 59 (3d Dist. 1971).

commission on her sales. She estimated she lost between $200,000 and $250,000 in annual sales as a result of her self-imposed restriction.

**{¶32}** However, in denying Kyrkos's bond request, the trial court stated:

> As to Kyrkos's motion for security, the court denies her request for a bond in the amount of $500,000 as it is unsupported by any documentation. Moreover, even the motion fails to explain how the number was arrived at. While the court will require a bond in some amount, the amount must be related to any alleged damages she and/or RC Distributors may experience due to the court's decision to prohibit Kyrkos from calling upon any former customers at Superior.

The court's judgment entry indicates the court was determined to set a bond based on evidence of Kyrkos's provable losses as required by law. We cannot say the trial court abused its discretion in deciding not to set bond at $500,000 where there was no evidence to support such an amount.[3]

**{¶33}** Therefore, the sixth assignment of error is overruled.

**{¶34}** Having determined the trial court improvidently granted Superior a preliminary injunction and found that the amount of the bond was reasonable, the remaining assignments of error are moot. *See* App.R. 12(A)(1)(c).[4]

**{¶35}** The trial court's judgment is affirmed in part, reversed in part, and remanded to the trial court with instructions to vacate the preliminary injunction.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

---

[3]   According to the court's docket, the trial court ultimately set bond at $3,200. However, that amount is not properly before this court because Kyrkos has not appealed from that judgment.

[4]   The remaining assigned errors are set forth in the appendix.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

MELODY J. STEWART, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR

## APPENDIX

## REMAINING ASSIGNMENTS OF ERROR

[II.]   The trial court committed reversible error in partially granting appellee Superior Beverage Group's motion for preliminary injunction.

[III.]   The trial court committed reversible error in denying appellant's motion for new trial.

[IV.]   The trial court committed reversible error in refusing to retroactively apply the imposed restriction to March 2012 when appellant self-imposed a restriction upon her employment.

[V.]   The trial court committed reversible error in denying appellant's affirmative defenses.