[Cite as *Seven Hills v. Stone Ridge*, 2025-Ohio-2362.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

CITY OF SEVEN HILLS,                    :

    Plaintiff-Appellee/                 :
    Cross-Appellant,

                                   No. 114316

    v.                                  :

STONE RIDGE MAINTENANCE            :
ASSOCIATION,

    Defendant-Appellant/                :
    Cross-Appellee.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 3, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-979548

---

### *Appearances:*

City of Seven Hills Director of Law Eric Moore; Diemert & Associates, Co., L.P.A., Joseph W. Diemert, Jr., Richard LaPilusa, *for appellee/cross-appellant*.

Ott & Associates Co., LPA, Steven M. Ott, Hilary A. Hall, and Devonice K. Austin, *for appellant/cross-appellee*.

LISA B. FORBES, P.J.:

{¶ 1} Stone Ridge Maintenance Association ("Stone Ridge" or "the Association") appeals the judgment granting the City of Seven Hills ("the City") an order for permanent injunctive relief. The City cross-appeals, challenging the denial of its motion for attorney fees. For the following reasons, we affirm the trial court's judgment.

## I. Background and Facts

### A. Background

{¶ 2} This case concerns erosion of a stream bank and who bears responsibility for fixing it. Stone Ridge is the maintenance association for a residential subdivision in the City of Seven Hills. An unnamed tributary of West Creek ("the stream" or "the watercourse") runs through the subdivision. The stream bank has been eroding since as early as 2011, most severely at a 90-degree bend located near two residential buildings. The stream is located on Association property ("Common Area"). Water flows into the stream from a City drainage pipe ("the Pipe").

{¶ 3} The stream-bank erosion in this case was the subject of prior lawsuits. In 2011, Stone Ridge filed suit in the Cuyahoga County Court of Common Pleas against several defendants, including the City. The City was dismissed from the lawsuit, which Stone Ridge then voluntarily dismissed without prejudice. Stone

Ridge filed an additional lawsuit in the same court against the subdivision's developers in 2014. That case settled in 2017.

**{¶ 4}** Neither Stone Ridge nor the City has attempted to fix the erosion.

**{¶ 5}** On May 16, 2023, the City filed suit against Stone Ridge in the Cuyahoga County Court of Common Pleas, requesting injunctive relief because of alleged violations of the Codified Ordinances of the City of Seven Hills, specifically Cod.Ord. 1138.02 and Appendix A of Chapter 1138. The City sought an order requiring the Association to "immediately begin taking measures to halt further erosion of the common area caused by the existing water course."

### B. Trial Testimony

**{¶ 6}** On July 12, 2024, this case proceeded to a bench trial. At trial, the parties elicited the following testimony.

#### 1. Daniel Collins

**{¶ 7}** Daniel Collins ("Collins") testified that he is a licensed civil engineer who the City employed in 2018 to "investigate" the "stream erosion issues" in the subdivision. Collins reviewed plat maps of the subdivision and took photographs of the erosion. He explained that a plat is "a record document establishing new properties on an existing piece of land." Collins further explained that a plat "goes to a planning commission and then also typically a city council for approving. Those approvals are required before . . . the developer would take [the plat] to the county for creating new lots . . . on a subdivision." According to Collins, the plat was

submitted by the developer, with the understanding that any responsibilities identified on the plat would subsequently be fulfilled by the housing association.

{¶ 8} The plat for the Stone Ridge housing development was approved by the City's engineering department, law director, planning commission, and counsel. Collins testified that, based upon his reading of the plat, "[t]he drainage water course maintenance is the responsibility of the homeowners association, Stone Ridge."

{¶ 9} Collins created a report that he provided to Stone Ridge, in which he recommended that the Association "address the stream bank erosion issues sooner rather than later, and as soon as possible, so that further stream erosion is prevented and the adjacent dwellings are protected from the erosive conditions."

{¶ 10} Per Collins, the Pipe predated the subdivision. He testified that most of the stream's water drains from the Pipe. Absent the water from the storm drain, "you may see some trickling water in there just from natural ground water . . . ."

{¶ 11} Collins testified that the 90-degree turn in the stream caused erosion by forcing water through an abrupt turn. He stated, "[T]he continual water coming out of that Pipe over a long period of time is the main source [of the erosion]." Collins suggested that Stone Ridge remedy the erosion by rerouting the watercourse to "soften that turn." He stated that exposure to natural elements like gravity, snow, rain, and wind also cause erosion.

### 2. Thomas Jaros

{¶ 12} Thomas Jaros ("Jaros") testified that he is a member of the Stone Ridge Board of Directors ("the Board"). Every member of the Board approved the settlement of the 2014 erosion case. Under the settlement, Stone Ridge received $390,000 and "agreed to diligently undertake efforts to make necessary and reasonable repairs to the erosion." Jaros testified that in 2019, 2020, and 2021 the City contacted the Association or him personally regarding the need to correct the erosion.

### 3. Thomas Sasura

{¶ 13} Thomas Sasura ("Sasura") testified that he is a resident of the Stone Ridge development. He attempted to contact the Board about the erosion but was "ignored." The Board did not notify him about the settlement of the 2014 erosion case.

### 4. Colton Rashilla

{¶ 14} Colton Rashilla ("Rashilla") testified that he is an environmental-engineering intern who Stone Ridge hired. He stated that erosion was severe at the 90-degree bend and should be addressed as soon as possible. Rashilla also approximated that 95 percent of the water hitting the bend comes from the Pipe. He recommended installing a basin to "dissipate . . . high velocity flows that are coming out of that Pipe" and "slow it before it enters the watercourse at full speed."

## C. Verdict and Appeal

{¶ 15} After the bench trial concluded, the court issued a journal entry on August 2, 2024, ordering a permanent injunction against Stone Ridge. The court ordered Stone Ridge "to immediately restore the eroded banks at the 90-degree bend" and to "take immediate action to abate further future erosion of the streambank at the same 90-degree bend."

{¶ 16} On August 27, 2024, the City filed a motion for attorney fees, which the court denied on September 18, 2024.

{¶ 17} Stone Ridge appealed, raising the following assignments of error:

I. The trial court committed prejudicial error in granting the plaintiff-appellee, the City of Seven Hills, an order for permanent injunctive relief.

II. The trial court committed prejudicial error in granting the plaintiff-appellee, the City of Seven Hills, an order for permanent injunctive relief based upon the trial court's mistaken opinion that the City of Seven Hills did not have the duty to maintain a drainage system free from conditions which would cause damage to private properties.

III. Stone Ridge is entitled to the protection of the Ohio Constitution's retroactivity clause since Stone Ridge development predates the promulgation of Section 1138.02.

{¶ 18} The City cross-appealed, raising the following cross-assignment of error:

I. The trial court abused its discretion in denying the City's motion for attorneys' fees.

## II. Law and Analysis

### A. Insufficient Evidence and Retroactive Application of the Building Code

{¶ 19} For ease of analysis, we will address Stone Ridge's first and third assignments of error together.  In its first assignment of error, Stone Ridge asserts that the trial court erred in granting the City a permanent injunction.  Stone Ridge argues the record did not contain clear and convincing evidence that a permanent injunction was necessary to prevent irreparable harm for which there was no adequate remedy at law.  Relatedly, in its third assignment of error, Stone Ridge asserts that the trial court applied Cod.Ord. 1138.02 retroactively, violating Ohio Const., art. II, § 28.  The court's application of Cod.Ord. 1138.02 was retroactive, Stone Ridge argues, because Stone Ridge relocated the watercourse in 2004, before the City promulgated Cod.Ord 1138.02 in 2007.  We disagree with both of Stone Ridge's arguments.

{¶ 20} Injunctive relief is an equitable remedy available where there is no adequate remedy at law.  *Mangano v. 1033 Water St., L.L.C.*, 2018-Ohio-5349, ¶ 13 (8th Dist.), citing *Haig v. Ohio State Bd. Of Edn.*, 62 Ohio St.2d 507, 510 (1992).  Ordinarily, to obtain injunctive relief, a party must provide clear and convincing evidence that an injunction is necessary to prevent irreparable harm, which is an injury for which there is no plain, adequate, and complete remedy at law and for which money damages would be impossible, difficult, or incomplete.  *Mangano* at

¶ 13, citing *1st Natl. Bank v. Mountain Agency, L.L.C.*, 2009-Ohio-2202, ¶ 47 (12th Dist.).

{¶ 21} However, the Supreme Court of Ohio has held that when a statute grants a specific injunctive remedy, a party is entitled to an injunction if the party demonstrates it has met the requirements of the statute, even without proving the ordinary equitable requirements. *Parma v. Silvis*, 2007-Ohio-1157, ¶ 10 (8th Dist.), citing *Mid-Am. Tire, Inc. v. PTZ Trading Ltd.*, 2002-Ohio-2427, ¶ 75 ("[A] person proceeding under a specific injunction statute need not satisfy the common-law conditions for injunctive relief, unless the statute provides otherwise.").

{¶ 22} We review a trial court's judgment granting a preliminary injunction for abuse of discretion. *Kyrkos v. Superior Beverage Group, Ltd.*, 2013-Ohio-4597, ¶ 12 (8th Dist.), citing *Garano v. State*, 37 Ohio St.3d 171, 173 (1988). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Abdullah v. Johnson*, 2021-Ohio-3304, ¶ 35. An abuse of discretion is "'more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *W.A.F.P., Inc. v. Sky Fuel Inc.*, 2024-Ohio-3297, ¶ 13 (8th Dist.), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 23} The trial court found R.C. 715.30 gave the City authority to sue for permanent injunction to prevent violations of its building code. The court also found Stone Ridge violated the City's building code, specifically Cod.Ord. 1138.02

and Appendix A to Chapter 1138. The court did not address whether clear and convincing evidence showed that Stone Ridge's conduct inflicted irreparable harm on the City.

{¶ 24} We find the trial court did not abuse its discretion in granting the City injunctive relief without finding clear and convincing evidence of irreparable harm.

{¶ 25} R.C. 715.30 allows a municipal corporation to "institute a suit for injunction to prevent or terminate" a violation of local ordinances or regulations enacted pursuant to R.C. 715.26 to 715.29, "[i]n the event any building or structure is being erected, constructed, altered, repaired, or maintained in violation of any such ordinances or regulations." R.C. 715.26 authorizes a municipality to "regulate the erection of buildings or other structures," including by enacting a building code.

{¶ 26} Pursuant to R.C. 715.26, the City enacted a building code in Part 11 of its Codified Ordinances.

### 1. Stone Ridge Accepted Responsibility For the Watercourse

{¶ 27} The City approved the Stone Ridge subdivision through the process set forth in its building code. Chapter 1125 of the building code requires developers to obtain the City's approval to construct new subdivisions and establishes a process for doing so. Stone Ridge acknowledges that the watercourse was moved in 2004, "during the construction of the Stone Ridge development . . . ." Stone Ridge proposed relocating the watercourse in the plat map it submitted to the City

for approval, as the building code required for construction of the new development. On the plat, Stone Ridge agreed to maintain the watercourse going forward, stating, "It will be the obligation of the Association to properly maintain, repair, operate and control such drainage system on the Common Areas . . . ." The City approved the plat, and the Stone Ridge development was built above the 90-degree bend in the re-routed watercourse, as designed.

### 2. Cod.Ord. 1138.02 Requires Stone Ridge to Maintain the Watercourse

{¶ 28} Stone Ridge argues that, because the current version of Cod.Ord. 1138.02 was not passed until 2007 and Building Code Appendix A was not promulgated until 2007, neither governs the watercourse, which Stone Ridge relocated in 2004. Further, Stone Ridge argues that the City is seeking to retroactively enforce Cod.Ord. 1138.02 and Appendix A. We disagree.

{¶ 29} Ohio Const., art. II, § 28 states that the "general assembly shall have no power to pass retroactive laws. . . ." The Ohio Supreme Court has explained, "To determine whether a statute is *unconstitutionally* retroactive, we apply a two-part test asking (1) whether the General Assembly expressly made the statute retroactive and, if so, (2) whether the law is substantive — impairing vested, substantial rights or imposing new burdens, duties, obligations, or liabilities in regard to a past transaction, such as retroactive increase in punishment for a criminal offense." (Emphasis in original.) *State v. Jarvis*, 2021-Ohio-3712, ¶ 9, citing *State v. Hubbard*, 2021-Ohio-3710, ¶ 14. The Retroactivity Clause "protects vested rights

from new legislative encroachments," and it "nullifies those new laws that 'reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].' (Bracketed material sic.)." (Cleaned up.) *Smith v. Smith*, 2006-Ohio-2419, ¶ 6. The Court further explained that the constitutional limitation against retroactive laws "'include[s] a prohibition against laws which commenced on the date of enactment and which operated in futuro, but which, in doing so, divested rights, particularly property rights, which had been vested anterior to the time of enactment of the laws.'" (Cleaned up.) *Bd. of Trustees of the Tobacco Use Prevention & Control Found. v. Boyce*, 2010-Ohio-6207, ¶ 14 (finding no preexisting property rights were implicated, and therefore, the statute at issue was not unconstitutionally retroactive).

{¶ 30} Here, both the prior and current versions of Cod.Ord. 1138.02 prohibit allowing earth-disturbing activities, except in compliance with standards set by the City. The prior version of Cod.Ord. 1138.02, in effect in 2004, provided, "No person shall cause or allow earth-disturbing activities on a development area except in compliance with the standards and criteria set out in the City of Seven Hills Storm Water Management and Urban Sediment Pollution Abatement Rules (hereinafter referred to as 'Rules')." Those Rules established that "the owner or person responsible for the development area shall be responsible for developing an erosion and sediment control plan." (Rules, Sec. IV.) Further, the Rules provided, "Any portion of the drainage system . . . that is constructed by the owner will be

continuously maintained by the owner or the owners in title of the affected lands unless it is officially accepted by the City of Seven Hills for maintenance." (Rules, Sec. VIII(A).)

{¶ 31} Since 2007, Cod.Ord 1138.02 has provided, "No person shall cause or allow earth-disturbing activities on a development area except in compliance with the standards and criteria set out in the City of Seven Hills 'Controlling Construction Site Soil Erosion, Sediment, and Other Wastes and Storm Water Runoff' rules' [Building Code Appendix A] and 'Controlling Post-Construction Water Quality Runoff' rules." Building Code Appendix A's "Maintenance" section states, "[P]ermanent drainage and soil erosion systems . . . will be continuously maintained into perpetuity." Regarding drainage and soil erosion systems in residential developments, similar to its predecessor, Building Code Appendix A, Maintenance § 2 states that a "Homeowners' Association . . . shall be continuously responsible for post-construction maintenance and inspections into perpetuity unless such maintenance and inspections become officially accepted by the Community." Building Code Appendix A's "Definitions" section states that Community means "The City of Seven Hills. . . ."

{¶ 32} Both the current and prior versions of the ordinances impose ongoing obligations on Stone Ridge and require continuous maintenance by Stone Ridge. Moreover, without regard to the obligations imposed by the prior and current

versions of Cod.Ord. 1138.02, when it submitted its plat to the City for approval, Stone Ridge expressly accepted responsibility for maintaining the stream.

{¶ 33} The current version of Cod.Ord. 1138.02 did not divest Stone Ridge of property rights and did not impose on Stone Ridge a new duty to maintain the watercourse. The fact that the City's current building code was promulgated in 2007 does not relieve Stone Ridge of its duty to maintain the watercourse.

{¶ 34} The record includes sufficient evidence to support the trial court's conclusion that Stone Ridge violated the building code by refusing to remedy the erosion at the watercourse's 90-degree bend. Stone Ridge's own expert witness, Colton Rashilla, testified that the erosion around the 90-degree bend was "severe" and needed to be addressed as soon as possible. Stone Ridge admits on appeal that "the erosion problem requires remediation." In 2018, the City's engineer, Dan Collins, recommended that Stone Ridge "address the stream-bank erosion issues sooner than later." Stone Ridge has not done so.

{¶ 35} There is no evidence that the City accepted responsibility for maintaining the watercourse. Again, the subdivision plat — submitted to and approved by the City before construction — obligated Stone Ridge to "maintain, repair, operate and control such drainage system on the Common Areas . . . ." The evidence presented at trial indicated that the City contacted the Association and Jaros in 2019, 2020, and 2021 about the need for Stone Ridge to correct the erosion caused by the stream. Consequently, Stone Ridge allowed "earth-disturbing

activity" and failed to maintain the watercourse, in violation of Cod.Ord 1138.02 and Building Code Appendix A.

{¶ 36} The trial court did not abuse its discretion in granting the City a permanent injunction. Because the City's pursuit of injunctive relief was authorized by statute, the trial court did not err by granting the injunction without finding the record contained clear and convincing evidence of irreparable harm for which there was no adequate remedy at law. We also find that the trial court did not retroactively apply Cod.Ord. 1138.02 to Stone Ridge.

{¶ 37} Accordingly, Stone Ridge's first and third assignments of error are overruled.

## B. The City's Duty to Keep Drainage System From Damaging Private Property

{¶ 38} Stone Ridge argues the trial court abused its discretion in granting the City a permanent injunction based on its finding that "Stone Ridge was solely responsible for the damage caused by a municipality's drainage system on private property." Stone Ridge argues it was the City's duty, not Stone Ridge's, to keep sewers it constructed "free from conditions that cause damage to private property."

{¶ 39} In support of this contention, Stone Ridge cites *Riscatti v. Prime Props. Ltd. Partnership*, 2012-Ohio-2941, ¶ 29, which states that a "municipality becomes liable for damages caused by its negligence" in maintaining a drainage system that damages private property "in the same manner and to the same extent as a private person under the same circumstance." That municipalities are not

immune from civil-damages claims alleging negligent maintenance of a drainage system does not impact the present case about a preliminary injunction. Neither party sued for damages based on negligence.

{¶ 40} As discussed, the record does not demonstrate that the trial court abused its discretion in finding Stone Ridge violated its duty to maintain the stream bank. Moreover, Collins testified that erosion occurs in part because of natural elements unrelated to the Pipe. These elements include gravity, snow, rain, and wind.

{¶ 41} Further, regardless of where the stream's water originates, the sharp angle of the bend contributes to erosion. Collins stated that subjecting flowing water to this "abrupt change" in direction erodes the bank. This is because "[e]nergy from the water hits [the 90-degree bend] nearly almost perpendicular in a way." Collins recommended that Stone Ridge remedy erosion by "soften[ing] that turn." Again, the bend is on Stone Ridge's Common Area and is the Association's duty to maintain.

{¶ 42} Collins also testified that the Pipe existed before the subdivision was built. Stone Ridge had reason to know of the Pipe when it constructed the subdivision and relocated the watercourse in 2004.

{¶ 43} Stone Ridge has not established the trial court erred in finding the Association, rather than the City, responsible for the erosion.

{¶ 44} Accordingly, Stone Ridge's second assignment of error is overruled.

## C. The City's Cross-Appeal — Motion for Attorney Fees

{¶ 45} In its cross-appeal, the City argues the trial court erred in denying its motion for attorney fees. The City argues it is entitled to attorney fees under R.C. 5312.13, which states that violations of community associations' governing documents are grounds for an "owners association or any owner to commence a civil action" and "an award of court costs and reasonable attorney's fees . . . ." Alternatively, the City argues it is entitled to attorney fees because Stone Ridge acted in bad faith. We disagree with both of the City's arguments.

{¶ 46} A prevailing party in a civil action may not ordinarily recover attorney fees as part of the costs of litigation. *Wilborn v. Bank One Corp.*, 2009-Ohio-306, ¶ 7. However, a party may recover attorney fees as a component of compensatory damages when punitive damages are awarded. *Best Motors, L.L.C. v. Kaba*, 2025-Ohio-640, ¶ 87 (8th Dist), citing *Zappitelli v. Miller*, 2007-Ohio-3251, ¶ 6. Attorney fees may also be awarded when a statute specifically requires the losing party to pay the prevailing party's attorney fees or when the prevailing party demonstrates the unsuccessful litigant acted in bad faith. *Id.*

{¶ 47} We review a trial court's decision to deny an award of attorney fees for an abuse of discretion. *Bales v. Forest River, Inc.*, 2019-Ohio-4160, ¶ 43 (8th Dist.).

{¶ 48} The court did not award the City punitive damages, so the City cannot recover attorney fees as a portion of compensatory damages.

{¶ 49} The City is also not entitled to attorney fees under R.C. 5312.13, which allows owners associations and owners to sue one another for violations of a planned community's governing documents. The City is neither an owners association nor an owner. It derives no rights to attorney fees from R.C. 5312.13.

{¶ 50} Further, the City has not demonstrated that Stone Ridge acted in bad faith. The City asks this court to apply a definition of "bad faith" the Ohio Supreme Court has used to assess motions for sanctions under Civ.R. 11. *State ex rel. Bardwell v. Cuyahoga Cty. Bd. Of Commrs.*, 2010-Ohio-5073, ¶ 8. In that context, the Court defined bad faith as conduct demonstrating "dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud . . . It means 'with actual intent to mislead or deceive another.'" *Id.*, quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 151 (1962).

{¶ 51} The record does not show that Stone Ridge undertook dishonest, fraudulent, or deceptive conduct. Although Stone Ridge violated a duty to fix erosion on its Common Area, the City has not demonstrated that Stone Ridge attempted to deceive the City or the court about the conditions of the watercourse. The record also does not support the City's argument that Stone Ridge concealed from its homeowners the 2017 settlement in the previous erosion case. Jaros testified that the settlement was announced to approximately 35 homeowners that attended a member meeting. The record includes evidence that the Association

never communicated with one specific homeowner — Sasura — about the settlement. Because the record lacks evidence Stone Ridge acted dishonestly, fraudulently, or deceptively, the trial court did not abuse its discretion in denying the City's motion for attorney fees.

{¶ 52} Accordingly, the City's cross-assignment of error is overruled.

{¶ 53} Judgment affirmed.

It is ordered that appellee/cross-appellant and appellant/cross-appellee split costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR