OPINION
{¶ 1} Plaintiff Metzger-Gleisinger Mechanical, Inc. appeals a summary judgment of the Court of Common Pleas of Richland County, Ohio, granted in favor of defendantappellee Mansfield City School District. Appellant had brought its action claiming appellee had violated the competitive bidding statutes regarding the construction of the school buildings in the State of Ohio. Appellant assigns two errors to the trial court:
 {¶ 2} "I. The trial court committed reversible error when it denied plaintiff's motion for summary judgment against defendant.
 {¶ 3} "II. The trial court committed reversible error when it granted defendant's motion for summary judgment against plaintiff."
 {¶ 4} Appellant's statement pursuant to Loc. App. R. 9 asserts the trial court's judgment is incorrect as a matter of law on the undisputed facts.
 {¶ 5} The record indicates in late 1999, appellee decided to construct a new high school. Appellee sought funding, and hired a local architectural firm, MKC Associates, Inc. to prepare a needs assessment/analysis to secure state funding. The Ohio School Facility Commission reviewed the assessment, and approved appellee's application for construction of the new high school. Appellee submitted a tax levy to the voters, and the voters approved it. Ultimately, the high school construction project was estimated to cost approximately $54,000,000.
 {¶ 6} After securing approval for funding, MKC prepared architectural drawings and detailed bid specifications for the project. The Ohio Schools Facilities Commission provided a construction manager, Gilbane Building Company. Eventually, the finalized technical bid specifications, along with appropriate construction drawings, were delivered to Gilbane in December, 2001. Gilbane and MKC assembled various bid packages, which contained the final bidding instructions, forms, technical design specifications and drawings. The bid packages were contained in packets called the "project manuals". The project manuals were released to prospective bidders in January 2002. The project manuals consisted of two volumes with several separate subsections referred to as bid packages MA-O3 through MA-10, plus two combination bid packages.
 {¶ 7} At issue here is bid package MA-05 and alternate bid package M-4. The two bid packages concerned heating, ventilation and air conditioning (HVAC) and temperature controls. Both bid package MA-05 and bid alternate M-5 have identical sets of technical specifications. The specifications list manufacturers and equipment, but an addendum to the specifications on alternate M-4 requires the bidder to base its bid on providing and installing equipment manufactured by Trane. Appellant and Guenther Mechanical, Inc. submitted bids for the base bid and the alternate.
 {¶ 8} Appellant's base bid of $6,095,571 was premised on using Carrier equipment, and its alternate bid included a cost increase of $650,000 to substitute Trane equipment. Guenther's bids both used Trane equipment, and accordingly, its cost increase for the alternate bid package was zero. In other words, Guenther's base bid and its alternate package bid were both $6,339,000. Thus, appellant's bid on the M-05 was lower than Guenther's, but higher on the alternate. Appellee awarded the contract to Guenther.
 {¶ 9} Appellant filed suit in the Ohio Court of Claims against the Ohio School Facilities Commission and appellee, eleven months after appellee awarded the contract to Guenther. The Court of Claims dismissed appellee from the action, and appellant then filed against appellee in common pleas court. By this time, fifteen months had elapsed from the time Guenther was awarded the contract. At this point, Guenther had performed at least some of the work and received some progress payments.
 {¶ 10} In order to prevail here, appellant must succeed on two separate arguments. It must show the alternative bid specifications did not comply with Ohio law, and were void. This would render appellant's bid the lowest bid on the remaining base package. Appellant then must show it is not limited to injunctive relief, but may also seek damages because appellee did not award the contract to appellant.
 III {¶ 11} The two assignments of error are complementary and we will discuss them together. Appellant correctly states this court reviews decisions regarding summary judgments de novo, and applies the same standard the trial court uses, Grafton v. Ohio Edison Company (1996),77 Ohio St. 3d 102. The trial court should not enter a summary judgment if it appears a material fact genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from undisputed facts, Hounshell v.American States Insurance Company (1981), 67 Ohio St. 2d 427. The trial court may not resolve ambiguities in the evidence presented, InlandRefuse Transfer Company v. Browning-Ferris Industries of Ohio, Inc.
(1984), 15 Ohio St. 3d 321.
 The Bidding Process
The trial court found appellant cited no Ohio law prohibiting a bid alternate like the one used here. It did not contain secret selection criteria, and all contractors had the same opportunity to bid on the Trane alternate. The court found the Board awarded the contract to the lowest responsible bidder as required by law.
 {¶ 12} Appellant argues the bid packages for the HVAC bids did not comply with Ohio's statutory scheme. The trial court found appellant concedes alternates which specify different materials are valid alternatives, but appellant maintains Ohio requires two separate sets of specifications: one for the base bid and a separate one for the alternate bid. Here the alternate specifications were set out in an addendum.
 {¶ 13} The trial court found it is obvious from the base and alternatives the Board wanted to compare the cost of Trane equipment with other manufacturers' equipment in order to decide if the additional cost of Trane equipment was worth additional expenditure, and the Board did so. The court found the language of the base and alternative bid specifications gave all potential bidders the information they needed to assemble their bids. We agree. We find nothing in the code to prohibit the appellee from comparison shopping, as it were, to see just what it could afford on its budget. Appellee was required to give all parties all the specifications and inform them of the criteria it would use in making its choice. Once appellee had selected an alternative, it was obliged by Ohio law to award the contract to the bidder who submitted the lowest responsible bid. We find the appellee complied with the Ohio scheme in awarding the contract.
 Injunction versus Damages {¶ 14} The trial court found there was an additional alternate reason to award summary judgment in favor of appellee. The court found even if there had been a defect in the specifications for the alternate bid, it was incumbent on appellant to file for injunctive relief immediately rather than waiting to collect for damages. The court cited HardriversPaving Construction, Inc. v. City of Niles (1994), 99 Ohio App. 3d 243
as authority for the policy considerations that restrict a bidder's recovery. In Hardrivers, the court found competitive bidding protects both the public and the bidders. If a bidder may receive monetary damages, only the bidders would be protected and the public would have to pay the contract price of the successful bidder plus the lost profits of the aggrieved bidder. If injunction is the sole remedy, both the public and bidders are protected, and the costs to the public are minimized.
 {¶ 15} We agree with the trial court monetary damages are not available to unsuccessful bidder where the bidder has not sought injunctive relief. In Midwest Service Management Company, Inc. v. LickingValley Board of Education (2001), 144 Ohio App. 3d 443, this court reviewed a school board's purchase of computers. One of the rejected bidders brought suit, claiming damages for lost profits in the amount of some $43,000. This court found injunctive relief is the remedy for the unsuccessful bidder, Midwest Service at 840, citations deleted. Injunctions are appropriate only where there is no adequate remedy of law, and because injunctive relief is available in these situations, generally monetary awards for lost profits are not appropriate.
 {¶ 16} In Midwest Service, this court discussed the Franklin County Court of Appeals decision in Mechanical Contractors Association, Inc. v.University of Cincinnati (2001), 141 Ohio App. 3d 333. In that case, the unsuccessful bidder demonstrated the university had violated competitive bidding rules, and won a preliminary and permanent injunction. The Franklin County Court of Appeals found although in general an unsuccessful bidder is entitled only to injunctive relief, the limited relief can result in a public entity's potential ability to violate laws intended to benefit the public without fear of any meaningful reprisals to deter such violations in the future. In addition, the court found plaintiffs who pursue such litigation and prevail might have no recourse in recouping financial losses incurred in the process of obtaining a declaratory judgment. In MechanicalContractors the litigation had gone on for years, and the costly nature of the litigation made both injunctive relief and, possibly, some type of monetary damages appropriate. The court also found the litigation resulted in an advantage to the taxpayers in protecting the system of competitive bidding.
 {¶ 17} In Cementech Inc. v. City of Fairlawn, Summit App. No. 22309,2005-Ohio-1709, the Ninth District Court of Appeals held if a bidder is wrongfully denied an injunction and cannot preserve its rights, then monetary damages may be appropriate. The court said protecting the integrity of the bidding process and ensuring wronged parties receive meaningful relief outweigh the risk of citizens' paying twice for the same project. Because of evidentiary problems, the plaintiff inCementech did not receive lost profits, and the jury awarded it only $3,725.54 to compensate it for the cost of preparing the bid.
 {¶ 18} Here the stakes were vastly higher. Unlike the plaintiff inCementech, appellant did not seek injunctive relief and protect its rights, but instead waited for its potential damages to grow. In the end, if appellant had prevailed, the public would have been required to pay far more for the project than anticipated or necessary. The cost to the taxpayers for lost profits could well have run into hundreds of thousands of dollars, or more. The prayer for damages in this case is in excess of $1,000,000.
 {¶ 19} We adhere to our previous holding the aggrieved party must first seek an injunction to mitigate its damages and to achieve the ultimate goal of competitive bidding, which is to spend tax dollars most fairly and efficiently.
 {¶ 20} Appellant argues it was the appellee, not appellant, who should have sought declaratory relief when threatened with lawsuits from appellant and other bidders. In fact, appellee requested permission to reject all bids and require potential bidders to resubmit their bids. The Ohio School Facilities Commission refused to allow this.
 {¶ 21} We find the aggrieved party in this situation is the rejected bidder, and the appellee was not required to ask for a declaratory judgment defining the obligation of the various parties.
 {¶ 22} Appellant also argues under the civil rules, if it asked for an injunction, it would have had to post a bond. The bond is required to compensate the party being enjoined should it be found the injunction was improperly granted. Appellant argues it would be impossible to obtain a bond in this case. If it had obtained an injunction, the entire construction project would come to a halt and all the other contractors and subcontractors would have experienced delay damages. Appellant suggests an appropriate bond amount would have been in the range of $7,000,000, and this cost alone is a bar to any potential plaintiff seeking redress through injunctive relief.
 {¶ 23} The amount of a bond is determined by the trial court, and the trial court may set a bond at any amount, or require no bond at all, see Civ. R. 65. The Rule also permits the enjoined party to ask the court to increase a bond if it is too low to protect the enjoined party. We are unpersuaded by appellant's argument it would have been futile to seek an injunction.
 {¶ 24} We find the trial court correctly determined monetary damages were inappropriate, and the relief available to appellant was an injunction to stop the project, and hence, the spending of public funds, until all questions about the bidding procedure had been resolved. Accordingly, we find the trial court did not err in granting summary judgment in favor of appellee.
 {¶ 25} Both of appellant's assignments of error are overruled.
 {¶ 26} For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
Gwin, J., Boggins, P.J., and Hoffman, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed. Costs to appellant.