[Cite as *Reliant Serv. MJF, L.L.C. v. Brown*, 2025-Ohio-5364.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

RELIANT SERVICES MJF, LLC,    :

    Appellant and Cross-Appellee,    :    CASE NO. CA2024-11-081

    :    <u>OPINION AND</u>
- vs -    <u>JUDGMENT ENTRY</u>
    :    12/1/2025

PAUL BROWN,    :

    Appellee and Cross-Appellant.    :

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 22CV095017

Cooper Elliott, and Jeffrey T. Kenney, for appellant and cross-appellee.

Thomas G. Eagle, for appellee and cross-appellant.

## **O P I N I O N**

**M. POWELL, J.**

{¶ 1}   Appellant, Reliant Services MJF, LLC (Reliant), appeals a decision of the

Warren County Court of Common Pleas granting judgment in favor of appellee, Paul

Brown, on Reliant's claim for breach of contract.[1] Brown cross-appeals the trial court's decision granting summary judgment in favor of Reliant on Brown's counterclaims for abuse of process and tortious interference with a contract and business relationship. Brown is an independent contractor who formerly performed work for Reliant.

{¶ 2} Reliant is a construction staffing company that specializes in providing punch-list services to home builders. Punch-list services is the process of completing finishing work on newly constructed homes, including drywall repairs, paint touchups, and door adjustments. Reliant retains independent contractors to perform the punch-list services for its home-builder clients. Reliant's main client is Ryan Homes. As pertinent here, Reliant contracted with Ryan Homes for work, and then selected one or more of its independent contractors to perform the requested work. Ryan Homes would then tell the independent contractors where to go and what punch-list tasks to perform.

{¶ 3} To protect its business and prevent its independent contractors from competing directly with Reliant or performing punch-list services directly for home builders, Reliant requires its independent contractors to sign noncompete covenants. The record shows that Reliant originally used a "Non Compete Form." However, after the Non Compete Form was found unenforceable by a Hamilton County court in 2017, Reliant adopted a new Independent Contractor Agreement that includes noncompetition and nonsolicitation clauses.

{¶ 4} Brown began working as one of Reliant's punch-list independent contractors in May 2013. Prior to that, Brown had worked as a handyman for residential property owners for 25 years, providing handyman and punch-list services. On May 16,

---

1. Reliant was originally founded by Michael Meyer under the name Reliant Services MM, LLC. The company's name changed to Reliant Services MJF, LLC when Matthew John Fenik purchased it in 2021. For purposes of this appeal, both entities refer to the same company and will be referred to as Reliant.

2013, Brown signed the Non Compete Form, which provided, "This form states that Paul Brown will not compete nor solicit, seek, or directly enter into contracts with Ryan Homes, Drees Homes or any customers established into a subcontractor agreement with Reliant Services LLC." Brown also signed an Independent Contractor Agreement for Services (the "Contract") which was back-dated to May 16, 2013. The Contract's noncompete clause provided that in light of "the highly competitive nature of" Reliant's business, Brown agreed he would not compete with Reliant while working as a Reliant independent contractor or for a period of one year after termination of his status as a Reliant independent contractor. Matthew Fenik acquired Reliant in October 2021. The acquisition included Reliant's various agreements with its independent contractors, including Brown's Contract and Non Compete Form .

{¶ 5} In September 2021 and while still working for Reliant, Brown formed his own company, Brown Building Services, LLC ("BBS"). BBS provided the same punch-list services that Brown performed for Ryan Homes on behalf of Reliant. The following month, Brown obtained a vendor's license with Ryan Homes. Thereafter, while still working as a Reliant independent contractor, Brown and his company began providing punch-list services for Ryan Homes. Brown's association with Reliant terminated in October 2021. Reliant discovered that BBS was providing punch-list services for Ryan Homes and confronted Brown. Brown denied he was competing with Reliant. Subsequently, Reliant hired an investigator who confirmed that Brown was providing punch-list services for Ryan Homes.

{¶ 6} On March 25, 2022, Reliant filed a complaint against Brown for breach of contract. Attached to the complaint were the 2013 Contract and Non Compete Form. Reliant requested a temporary restraining order ("TRO") and a preliminary injunction against Brown. On March 28, 2022, a magistrate conducted a hearing on Reliant's TRO

motion. Brown was present at the hearing but was not represented by counsel. The magistrate granted a TRO subject to Reliant posting a $1,000 bond pursuant to Civ.R. 65(C). Brown made no objection to the bond. Among other things, the TRO enjoined Brown from "directly or indirectly engaging in any competitive business with [Reliant] within 100 miles of Cincinnati, Ohio."

{¶ 7}   A hearing on Reliant's motion for a preliminary injunction was held on April 26, 2022. The magistrate heard testimony from Brown, Fenik (Reliant's sole managing partner), and Mark Maier (general manager for NVR, Inc., dba Ryan Homes). During the hearing, Reliant introduced Exhibit 8, consisting of the Contract, the Non Compete Form, and a W-9 form. The Contract was an eight-page document and missing its page four. Brown admitted signing the Non Compete Form. Brown acknowledged his signature was on the last page of the Contract and that he signed that page because he was told to do so by Reliant's prior owner, but denied any recollection of having previously seen the actual whole Contract. Brown suggested his signature had been forged or superimposed upon the signature line. Brown also pointed out that his address on the Contract reflected where he lived after March 26, 2014, however, he did not reside at that address on May 16, 2013, the date on the Contract.

{¶ 8}   Fenik testified that Brown's Contract was among the electronic documents he obtained from Reliant's prior owner when he acquired Reliant in October 2021, and identified the Contract as part of Exhibit 8. Fenik testified that he referenced Brown's Contract when he confronted Brown about his working directly with Ryan Homes in competition with Reliant and that Brown acknowledged its existence. Fenik also testified that his understanding was that the Contract's noncompete clause was a revision of the Non Compete Form that was implemented after the Non Compete Form was challenged in court and found unenforceable.

{¶ 9} Mark Maier, Ryan Homes' general manager, testified that Ryan Homes' direct relationship with Brown had no effect on the amount of work for which Ryan Homes contracts with Reliant.

{¶ 10} Brown objected to the admission of the Contract included in Exhibit 8 on the grounds it was a copy and not the original contract (citing Evid. R. 1002 and 1003), it was incomplete (missing its page four), and it was back-dated. The magistrate deferred ruling on the admissibility of Exhibit 8, subject to Reliant producing Brown's original Contract within seven days. On April 26, 2022, the magistrate journalized an order stating that Reliant "shall have until close of business on May 3, 2022 to provide notice to this court and defense counsel whether the original copy of the 'Independent Contractor Agreement for Services' at issue in this matter can be located. If the original can be found, such original shall be provided to the Court as a substitution for Plaintiff's Exhibit 8 and a copy of the original shall be provided to Defense counsel." The magistrate's order further modified the TRO, thereby enjoining Brown from only directly or indirectly engaging in business "with Ryan Homes. [Brown] may otherwise perform services for any other companies, organizations, entities, etc." Brown did not file a motion to set aside the magistrate's order pursuant to Civ.R. 53(D).

{¶ 11} On April 27, 2022, during the pendency of the magistrate's decision on the motion for preliminary injunction, Brown answered Reliant's complaint and counterclaimed, alleging abuse of process and tortious interference with a contract and business relationship.

{¶ 12} On May 2, 2022, Reliant filed a Notice of Compliance that included the original Non Compete Form and the complete original Contract. The notice was accompanied by affidavits from Fenik and Mark Meyer, Reliant's prior owner. Meyer averred that the Contract was implemented sometime after 2017 when the Hamilton

County Common Pleas Court ruled that the Non Compete Form was unenforceable. Thereafter, Meyer required Reliant's independent contractors to sign the Contract. Meyer further averred that he witnessed Brown sign the Contract and that he advised him it would be back-dated to May 16, 2013, the day Brown originally contracted with Reliant. Fenik's affidavit merely recited his testimony during the preliminary injunction hearing regarding his acquisition of Reliant, which included Brown's Contract. A copy of Brown's original Contract was attached to Fenik's affidavit as an exhibit and identified. Brown filed objections to the Fenik and Meyer affidavits, arguing they were testimonial in nature, were not subject to cross-examination, and were inadmissible hearsay.

{¶ 13} On May 6, 2022, the magistrate issued a decision granting Reliant's motion for a preliminary injunction. Addressing the admissibility of Brown's Contract, the magistrate held that Meyer's affidavit would not be considered because he was not a witness at the preliminary injunction hearing and therefore, was not subject to cross-examination. However, the magistrate considered Fenik's affidavit as he was a witness at the hearing subject to cross-examination. The magistrate ruled that Brown's original Contract would be supplemented into the record. The magistrate further observed, "all parties appear to agree the 'Non Compete Form' is not a binding or enforceable covenant not to compete and is, therefore, irrelevant to these proceedings but for the fact it was originally provided to and signed by [Brown] on or about May 16, 2013." The preliminary injunction issued by the magistrate included an order enjoining Brown "from directly or indirectly engaging in any competitive business with [Reliant] with the construction company known as Ryan Homes."

{¶ 14} Brown filed objections to the magistrate's decision granting Reliant a preliminary injunction. Brown also objected to the magistrate's consideration of Fenik's affidavit and the substitution of the original Contract for Exhibit 8. On December 12, 2022,

the trial court dissolved the preliminary injunction, finding that Reliant had "not met the burden of clear and convincing evidence necessary to justify an injunction" because "[n]othing in the evidence presented to date indicates any harm is irreparable." The trial court did not address the admissibility of the Contract or Fenik's affidavit.

{¶ 15} Reliant subsequently moved for summary judgment on Brown's counterclaims. On April 1, 2024, the magistrate granted Reliant's motion and dismissed Brown's counterclaims for abuse of process and tortious interference with a contract and business relationship. Brown filed objections to the magistrate's decision. On May 20, 2024, the trial court overruled Brown's objections and adopted the magistrate's April 1, 2024 decision as the court's order.

{¶ 16} A bench trial on Reliant's breach-of-contract claim was held before the magistrate on July 9, 2024. At the outset of the trial, the magistrate noted that the parties had agreed that the transcript of the preliminary injunction hearing and the exhibits admitted during that hearing, subject to pending objections, would be considered for purposes of the trial. Brown renewed his objection to the Contract. Over Brown's objection, the Contract was admitted into evidence.

{¶ 17} On August 12, 2024, the magistrate issued a decision dismissing Reliant's breach-of-contract claim and granting judgment in favor of Brown. The magistrate found that the Contract's noncompete clause was unenforceable because it placed an undue hardship on Brown. The magistrate also found that the lack of geographical limitations in the noncompete clause made it unduly restrictive. Moreover, there was no evidence that Brown learned his trade through Reliant or that Reliant's proprietary information or trade secrets were implicated by the punch-list services Brown performed through BBS.

{¶ 18} Reliant and Brown each filed objections to the magistrate's decision. Reliant's objections centered on the 2013 Non Compete Form, arguing it was enforceable

because it only sought to limit Brown from working for Ryan Homes. Brown's objection centered on the Contract, challenging its admission into evidence, and on whether he was entitled to damages for losses incurred while he was prohibited from working during the time the TRO and preliminary injunction were in effect.

{¶ 19} On October 29, 2024, the trial court overruled both parties' objections and adopted the magistrate's decision as follows: "judgment is hereby rendered in favor of [Brown] on [Reliant's] sole cause of action for breach of contract. [Reliant's] claim is dismissed on the merits and [Brown] is entitled to release of the $1,000 bond posted by [Reliant] under Civ.R. 65(C)."

{¶ 20} Reliant Services now appeals, raising one assignment of error. Brown cross-appeals, raising two cross-assignments of error.

{¶ 21} Reliant's Assignment of Error No. 1:

THE TRIAL COURT ERRED BY NOT ENFORCING THE VALID NON-COMPETE AGREEMENT BETWEEN THE APPELLANT AND THE APPELLEE.

{¶ 22} Reliant challenges the trial court's dismissal of its breach-of-contract claim, arguing the court erred in finding that its noncompete agreement places an undue hardship on a former independent contractor and is, therefore, unenforceable. Reliant asserts that its noncompete agreement is very limited in scope because it only seeks to prevent Brown from directly working for Ryan Homes.

{¶ 23} Brown challenges the validity of the Contract's noncompete clause. Although Reliant's complaint included as Exhibit A the Contract and the Non Compete Form as though the two were a single document, and again submitted the two documents as Exhibit 8 at the preliminary injunction hearing as though they were Reliant's sole noncompete covenant, the record revealed that the Contract and the Non Compete Form were signed separately and years apart.

{¶ 24} In her August 12, 2024 post-bench trial decision, the magistrate found that "the Contract, which was an updated noncompete clause from the 'Non Compete Form' was not signed on the same date as the 'Non Compete Form' and was likely backdated from someone at Reliant Services." Based upon the foregoing, the magistrate considered only the Contract in analyzing whether Reliant's noncompete covenant was enforceable. Although Reliant filed objections to the magistrate's decision, it did not specifically object to this finding by the magistrate. Reliant has therefore waived any appeal as to this finding other than a claim of plain error. Reliant does not claim plain error. *See* Civ.R. 53(D)(3)(b)(iv); *Marck v. Partin*, 2024-Ohio-4829 (12th Dist.). In its decision overruling Reliant's objections to the magistrate's decision, the trial court acknowledged there were two noncompete clauses at issue in this case, but "decline[d] to read the 'Non Compete Form' in conjunction with the [Contract] to limit the noncompete clause to Ryan Homes," in part because "there is no indication in the documents that they should be read in conjunction with each other" and "the parties acknowledged at the preliminary injunction hearing that the 'Non Compete Form' was not a valid noncompete clause and was replaced by the [Contract]." Reliant did not assign as error on appeal the trial court's finding that the Non Compete Form was not a valid noncompete clause and that it had been replaced with the Contract's noncompete clause. We will therefore only address the enforceability of the Contract's noncompete clause.

{¶ 25} The Contract's noncompete clause provides that, for one year after termination, an individual working for Reliant shall not engage in any competitive business ("defined as any Customer of Company as they presently exist or as may be in existence or development of the date of termination of my retention with the Company"), assist others in engaging in any competitive business, or induce any employees or other independent contractors of Reliant to terminate their employment with Reliant and/or

engage in any competitive business.

{¶ 26} The magistrate found that the clause was unduly restrictive because it contained no geographic specifications. The magistrate further found "there was no evidence presented that [Brown] learned his trade through Reliant or that the punch-out work involved trade secrets that [Brown] learned and could potentially share with a new employer to the detriment of Reliant." Based upon the foregoing, the magistrate found that the noncompete clause placed an undue hardship on Brown and was therefore unenforceable. The trial court likewise found that the Contract's noncompete clause was unenforceable because it had "no geographic limitations and no limitation to only address Ryan Homes."

{¶ 27} As a general rule, restrictive covenants not to compete are disfavored by the law. *Willis Refrig., Air Conditioning & Heating v. Maynard*, 2000 Ohio App. LEXIS 940, *19 (12th Dist. Jan. 18, 2000). On the other hand, though "cautiously considered and carefully scrutinized," Ohio courts have long recognized the validity of noncompete agreements if they contain reasonable geographical and temporal restrictions. *Lake Land Emp. Group of Akron, LLC v. Columber*, 2004-Ohio-786, ¶ 7-9. Thus, a noncompete covenant will be enforced if "reasonable." *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 25 (1975).

{¶ 28} A noncompete covenant is reasonable if (1) its restrictions are not greater than what is required to protect the employer, (2) it does not impose an undue hardship on the employee, and (3) it is not injurious to the public. *Id.* at 26. In determining the validity of a noncompete covenant, each case must be decided on its own facts. *Id.* at 25. A plaintiff seeking to enforce a noncompete covenant must establish, by clear and convincing evidence, each of the three elements above. *Total Quality Logistics, L.L.C. v. BBI Logistics, L.L.C.*, 2024-Ohio-2597, ¶ 33 (12th Dist.).

{¶ 29} In determining whether a noncompete covenant is reasonable, a court should consider the following factors: (1) the absence or presence of limitations as to time and space, (2) whether the employee represents the sole contact with the customer, (3) whether the employee is possessed with confidential information or trade secrets, (4) whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition, (5) whether the covenant seeks to stifle the inherent skill and experience of the employee, (6) whether the benefit to the employer is disproportional to the detriment to the employee, (7) whether the covenant operates as a bar to the employee's sole means of support, (8) whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment, and (9) whether the forbidden employment is merely incidental to the main employment. *Raimonde*, 42 Ohio St.2d at 25.

{¶ 30} Keeping the foregoing factors in mind, we conclude that the restraints and resultant hardship on Brown do exceed that which is reasonable to protect Reliant's legitimate business interests. The Contract's noncompete clause is a statewide, if not worldwide, limitation from employment with any of Reliant's home-builder clients for a period of one year. A one-year time period for a noncompete covenant is generally reasonable. *Kyrkos v. Superior Beverage Group, Ltd.*, 2013-Ohio-4597, ¶ 21 (8th Dist.). However, in the circumstances of this case, where Brown only performed work for Reliant's client, Ryan Homes, in Ohio's four southwest counties, the lack of any geographic limitations makes the noncompete clause unduly restrictive. *Professional Investigations & Consulting Agency, Inc. v. Kingsland*, 69 Ohio App.3d 753, 760 (10th Dist. 1990); *Evans v. Duracote Corp.*, 13 Ohio App.2d 63 (11th Dist. 1968). Thus, the first *Raimonde* factor weighs against enforcing the Contract's noncompete clause.

{¶ 31} An employer's legitimate interests in utilizing a noncompete covenant

include "prevent[ing] the disclosure of a former employer's trade secrets or the use of the former employer's proprietary customer information to solicit the former employer's customers." *BBI Logistics*, 2024-Ohio-2597, at ¶ 29 (12th Dist.). Another legitimate purpose of a noncompete covenant is the retention of employees in which an employer has invested time and other resources. *Total Quality Logistics, L.L.C. v. Leonard*, 2023-Ohio-2271, ¶ 27 (12th Dist.). However, this case did not implicate trade secrets or confidential information. Moreover, the record plainly shows that Reliant did not invest time and money in training Brown, and did not play any role in Brown's development as a skilled and professional punch-list contractor. Rather, Brown worked as a handyman providing handyman and punch-list services for 25 years prior to his employment with Reliant. Stated differently, Brown's knowledge and skills were not developed or improved while he was a Reliant independent contractor. Noncompete covenants that prevent an employee from using his or her general skills and experience in the marketplace weigh against enforcement. *Kyrkos* at ¶ 25 (8th Dist.). In addition, while the record indicates Brown dealt directly with Ryan Homes in scheduling work as a Reliant independent contractor, he was not the sole contact with Ryan Homes. Thus, the second, third, and eighth *Raimonde* factors weigh against enforcing the Contract's noncompete clause.

{¶ 32} Despite an employer's interests, enforcement of a noncompete covenant cannot cause undue hardship on a former employee. *BBI Logistics* at ¶ 31 (12th Dist.). "To be sure, any person who is prevented from practicing his profession or trade for a period of time in an area in which it has been practiced, suffers some hardship. However, the *Raimonde* test requires more than just some hardship." *AK Steel Corp. v. Arcelormittal USA, L.L.C.*, 2016-Ohio-3285, ¶ 19 (12th Dist.). "The public's interest in determining the reasonableness of a noncompete [covenant] 'is primarily concerned with . . . promoting fair business competition.'" *BBI Logistics* at ¶ 32. In highly competitive industries,

enforcement of noncompete covenants are often found to not adversely affect the industry or harm the public in limiting the public's options in obtaining goods and services. *Id.*

{¶ 33} Brown is providing the same type of punch-list services for Ryan Homes now as he did for it when he worked as a Reliant independent contractor. The forbidden employment is therefore not merely incidental to the main employment under the ninth *Raimonde* factor. Although the Contract's noncompete clause prevents Brown from working for or with Reliant's home-builder clients for a period of one year, it does not act as a complete bar to his sole means of support or stifle his inherent skills and experience. Fenik testified that Reliant does not prevent current and former independent contractors from providing general handyman services or landscaping to residential property owners or from working in commercial construction. Fenik stated that many individuals working for Reliant, in fact, do side work on the weekends or if they have an opening in their work schedule. Brown's testimony revealed that during the nine months the preliminary injunction was in effect, he did not seek any alternative handyman employment or work in commercial construction. Moreover, although the record shows Brown worked mostly, if not exclusively, for Ryan Homes as a Reliant independent contractor, he never inquired of Reliant if he could work for its other home-builder clients during the nine-month preliminary injunction. The *Raimonde* test requires more than just some hardship. Brown did not show that he could not readily obtain a position or establish a non-competing practice. *Wall v. Firelands Radiology, Inc.*, 106 Ohio App.3d 313, 333 (6th Dist. 1995). Thus, the fifth and seventh *Raimonde* factors weigh in favor of enforcing the Contract's noncompete clause. *See BBI Logistics*, 2024-Ohio-2597, at ¶ 39 (12th Dist.).

{¶ 34} While the public interest is served by robust competition between companies, a company such as Reliant still has an interest in preventing unfair competition. The record shows that skilled and reliable punch-list independent contractors

such as Brown are highly sought out and challenging to find. Brown did not work for Ryan Homes and was not acquainted with its executives during the 25 years he worked as an independent handyman prior to working for Reliant as an independent contractor. Thus, Brown took advantage of the relationship he formed with Ryan Homes while a Reliant independent contractor to leverage an independent business relationship with Ryan Homes. Nevertheless, the Contract's noncompete clause seeks to eliminate or limit merely ordinary competition, as opposed to competition unfair to Reliant, because it is defined so broadly that it prohibits Brown from working for *any* competitor, including competitors performing work that is unrelated to Brown's work for Reliant. Thus, the fourth *Raimonde* factor weighs against enforcing the Contract's noncompete clause.

{¶ 35} As for whether the benefit to Reliant is disproportional to the detriment of Brown, the record shows that Reliant's amount of business with Ryan Homes did not change, let alone decline, as a result of Brown's direct work for Ryan Homes. In that respect, Reliant suffered no detriment. By contrast, Brown suffered a detriment in that he derived significant income from directly working for Ryan Homes prior to the preliminary injunction. Reliant claims it proved it suffered $12,668.25 in damages, which represent 30 percent of the $42,227.50 Brown earned working directly for Ryan Homes between October 30, 2021, and March 27, 2022 (based upon Fenik's testimony that Reliant generally received 30 percent of all amounts billed to Ryan Homes for punch-list services). However, there is no evidence this business would have gone to Reliant. As stated, the record shows that Reliant continued to get the same amount of business from Ryan Homes as it did before Brown's departure. Thus, Reliant did not establish it was damaged and the sixth *Raimonde* factor weighs against enforcing the Contract's noncompete clause.

{¶ 36} In conclusion, we find the facts of this case applied to the *Raimonde* factors

support the unreasonableness of the Contract's noncompete clause. The trial court, therefore, did not err in finding that the Contract's noncompete clause is unenforceable and in dismissing Reliant's breach-of-contract claim.

{¶ 37} Reliant's first assignment of error is overruled.

{¶ 38} Brown's Cross-Assignment of Error No. 1:

THE TRIAL COURT ERRED IN NOT AWARDING BROWN LOSSES DURING THE WRONGFUL INJUNCTION.

{¶ 39} Brown argues that the trial court erred in determining he was only entitled to the $1,000 bond Reliant posted as a result of the wrongful issuance of the preliminary injunction. Brown asserts he is entitled to the loss of income he incurred ($115,000) when he did not work during the time period between the March 27, 2022 issuance of the temporary restraining order and the December 12, 2022 dissolution of the preliminary injunction, as expressly provided by Civ.R. 65(C). In support of his argument, Brown cites *Beres v. Hope Homes, Inc.*, 1983 Ohio App. LEXIS 14938 (9th Dist. Apr. 27, 1983), and *Sheets v. Chittum*, 90 Ohio App. 341 (10th Dist. 1951).

{¶ 40} Civ.R. 65(C) provides in part,

No temporary restraining order or preliminary injunction is operative until the party obtaining it gives a bond executed by sufficient surety, … in an amount fixed by the court or judge allowing it, to secure to the party enjoined the damages he may sustain, if it is finally decided that the order or injunction should not have been granted.

{¶ 41} The amount of the bond is determined by the trial court, and the trial court may set a bond at any amount. *Metzger-Gleisinger Mechanical, Inc. v. Mansfield City School Dist.*, 2005-Ohio-2727, ¶ 23 (5th Dist.). The bond is required to compensate the party being enjoined should it be found the injunction was improperly granted. *Id.* at ¶ 22. However, the enjoined party is only entitled to recover the amount of its provable damages up to the amount of the bond. *Kyrkos*, 2013-Ohio-4597, at ¶ 30 (8th Dist.); *Kingsland*, 69

- 15 -

Ohio App.3d at 762.

{¶ 42} Civ.R. 65(C) permits the enjoined party to move the court to increase the bond, "[b]efore judgment, upon reasonable notice to the party who obtained [the] injunction." At the conclusion of the preliminary injunction hearing, Brown's counsel moved the trial court to increase the bond, but presented no evidence in support of his request and did not suggest an amount. The court denied the request, stating, "I'm not going to increase the bond at this time." The court then advised the parties that the TRO would be modified to enjoin Brown from working only for Ryan Homes, and that "[i]f there's anyone else that he wants to work with, that's fine in any geographical area at all. I'm just going to narrow it down to Ryan Homes at this point." That same day, the court issued an order reflecting the modification of the TRO. Thereafter, Brown never raised the bond issue again. Although he could have filed a motion pursuant to Civ.R. 65(C) to increase the bond and present the trial court with evidence quantifying his claimed loss of income, he did not.

{¶ 43} The cases cited by Brown as authority that an enjoined party can recover damages beyond a posted bond amount are not applicable here. Contrary to Brown's suggestion, the cases do not explicitly hold that damages beyond the posted bond amount are generally available, or that damages for a wrongfully issued injunction are not limited to the security posted pursuant to Civ.R. 65(C). In addition, the cases do not involve a scenario in which an enjoined party was awarded damages for a wrongfully issued injunction over the posted security amount.

{¶ 44} In light of the foregoing, Brown's damages are limited to the amount of the posted bond–1,000, and the trial court did not err in determining he was only entitled to the posted bond as a result of the wrongful issuance of the preliminary injunction. *Kyrkos*, 2013-Ohio-4597, at ¶ 30 (8th Dist.); *Kingsland*, 69 Ohio App.3d at 762. Brown's first cross-

assignment of error is overruled.

{¶ 45} Brown's Cross-Assignment of Error No. 2:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT DISMISSING BROWN'S COUNTERCLAIMS.

{¶ 46} Brown argues the trial court erred in granting summary judgment to Reliant on his counterclaims for abuse of process and tortious interference with a contract and business relationship.

{¶ 47} Summary judgment is proper when (1) there is no genuine issue of any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence submitted can only lead reasonable minds to a conclusion which is adverse to the nonmoving party, construing the evidence most strongly in that party's favor. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66 (1978). The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt,* 1996-Ohio-107, ¶ 17. Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trial court to resolve. *Id.* The nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must supply evidentiary materials setting forth specific facts that demonstrate there is a genuine issue for trial. Civ.R. 56(E); *Puhl v. U.S. Bank, N.A.*, 2015-Ohio-2083, ¶ 13 (12th Dist.). Summary judgment is proper if the nonmoving party fails to set forth such facts. *Id.*

{¶ 48} In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?" *Palmer v. Mossbarger*, 2015-Ohio-231, ¶ 13 (12th Dist.).

- 17 -

{¶ 49} An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently and without deference to the decision of the trial court. *Paramount Farms Intl., L.L.C. v. Ventilex B.V.*, 2016-Ohio-1150, ¶ 16 (12th Dist.).

**Tortious Interference with a Contract or Business Relationship**

{¶ 50} Brown argues the trial court erred in granting summary judgment to Reliant on his tortious interference counterclaims. Brown asserts it is "undisputed [he] and Ryan Homes had a business relationship by their contract for handyman services that Reliant stopped by use of what was ultimately determined to be an improper resort to injunctive relief."

{¶ 51} "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 1995-Ohio-66, ¶ 49. "'The elements essential to recovery for a tortious interference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom.'" *Ginn v. Stonecreek Dental Care*, 2015-Ohio-1600, ¶ 11 (12th Dist.), quoting *Wolf v. McCullough-Hyde Mem. Hosp.,* 67 Ohio App.3d 349, 355 (12th Dist. 1990).

{¶ 52} In contrast, the elements of tortious interference with a contract are "'(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages.'" *Ginn* at ¶ 12, quoting *Fred Siegel Co., L.P.A. v. Arter & Hadden,* 1999-Ohio-260, ¶ 18. To prevail, a party must demonstrate that the wrongdoer

intentionally and improperly interfered with the party's contractual relations with another. *Total Quality Logistics, L.L.C. v. All Shippers, Inc.*, 2021-Ohio-781, ¶ 78 (12th Dist.).

{¶ 53} "The tort of interference with contract is based on the principle that one who, without privilege to do so, induces or otherwise purposefully causes a third person not to perform a contract with another is liable to the other for any of the harm caused." *Egypt, Inc. v. Akron Bd. of Edn.*, 1990 Ohio App. LEXIS 5675, *4 (9th Dist. Dec. 19, 1990). "If no contract existed between the plaintiff and a third party at the time when the defendant allegedly interfered, the plaintiff's claim for intentional interference with a contract must fail as a matter of law." *Magnum Steel & Trading, L.L.C. v. Mink*, 2013-Ohio-2431, ¶ 10 (9th Dist.). In other words, a contract must exist. Here, Brown has presented no evidence of a contract between himself and a third party, including Ryan Homes, with which Reliant has interfered. The trial court, therefore, did not err in dismissing Brown's counterclaim for tortious interference with a contract.

{¶ 54} We likewise find that the trial court did not err in dismissing Brown's counterclaim for tortious interference with a business relationship. Brown asserts that Reliant intentionally interfered with Brown's business relationship with Ryan Homes, thereby causing a breach or termination of the relationship, "by use of what was ultimately determined to be an improper resort to injunctive relief." Contrary to Brown's suggestion, the trial court never held that Reliant's act of seeking injunctive relief was improper. Rather, the trial court dissolved the preliminary injunction on the sole ground that "[Reliant] ha[d] not met the burden of clear and convincing evidence necessary to justify an injunction." Turning to Brown's argument, Reliant's mere resort to filing a civil lawsuit against Brown and seeking a preliminary injunction does not constitute a tortious interference with a business relationship. To hold otherwise would have a chilling effect on valid lawsuits seeking to enforce contractual provisions such as a noncompete

covenant. Moreover, Brown has failed to articulate any damages resulting from Reliant's alleged tortious interference with a business relationship. Here, Brown was out of work for several months as a result of the magistrate's decision granting Reliant a preliminary injunction. Thus, Brown's claimed loss of income was not caused by Reliant's filing of the lawsuit and seeking of a preliminary injunction, but by the magistrate granting the preliminary injunction.

**Abuse of Process**

{¶ 55} Brown argues the trial court erred in granting summary judgment to Reliant on his abuse-of-process counterclaim. Brown asserts that Reliant's resort to injunctive relief was not only "an act committed during the process that was not proper in the normal context of the proceeding," but it also perverted the proceeding to accomplish the ulterior purpose of stopping Brown from working at all and showing others of like mind what can happen if they attempt to compete with Reliant.

{¶ 56} Abuse of process encompasses cases where "legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 1994-Ohio-503, ¶ 11. Thus, abuse of process is designed to remedy the misuse or exploitation of the legal process after a party has properly initiated a lawsuit with probable cause. *Gauthier v. Gauthier*, 2019-Ohio-4397, ¶ 67 (12th Dist.).

{¶ 57} To prevail on an abuse-of-process claim, the claimant must establish that (1) a legal proceeding has been set in motion in proper form and with probable cause, (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, and (3) direct damage has resulted from the wrongful use of process. *Id.* "[T]he key consideration in an abuse of process action is whether an improper purpose

- 20 -

was sought to be achieved by the use of a lawfully brought previous action." *Yaklevich* at ¶ 19. In a claim for abuse of process, the tortious character of the conduct of the initiator of the lawsuit must be clearly shown by the claimant to entitle him to maintain his action. *Clermont Environmental Reclamation Co. v. Hancock*, 16 Ohio App.3d 9, 11 (12th Dist. 1984). "[A]buse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 1996-Ohio-189, ¶ 31.

{¶ 58} We find there is no genuine issue of material fact regarding Brown's abuse-of-process counterclaim because Brown failed to present evidence establishing Reliant's ulterior motive. That is, there is no summary judgment evidence that Reliant had an ulterior motive in seeking injunctive relief. Here, Reliant filed a lawsuit against Brown and sought injunctive relief specifically to prevent Brown from competing directly with it. These are not "ulterior purposes" that Reliant aims to accomplish but are clearly the stated and primary goals of these proceedings. Furthermore, as plainly shown by its December 12, 2022 decision dissolving the preliminary injunction, it is well within the trial court's jurisdiction to grant or deny a preliminary injunction. *See Robb* at ¶ 31. *See also Robert W. Clark, M.D., Inc. v. Mt. Carmel Health*, 124 Ohio App.3d 308, 315 (10th Dist. 1997) (noncompete covenants may be enforced by injunctive relief). The trial court, therefore, did not err in granting summary judgment in favor of Reliant on Brown's abuse-of-process counterclaim.

{¶ 59} In light of the foregoing, the trial court did not err in granting summary judgment to Reliant on Brown's counterclaims for abuse of process and tortious interference with a contract and business relationship. Brown's second cross-assignment of error is overruled.

{¶ 60} Judgment affirmed.


BYRNE, P.J., and M. SIEBERT, J., concur.


## JUDGMENT ENTRY


The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 50% to appellant and 50% to appellee.


/s/ Matthew R. Byrne, Presiding Judge


/s/ Mike Powell, Judge


/s/ Melena S. Siebert, Judge